Filed 6/25/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF PATTERSON,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>TURLOCK IRRIGATION DISTRICT,<br><br>    Defendant and Respondent. | F067629<br><br>(Super. Ct. No. 670181)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County.  Roger M. Beauchesne, Judge.

Burke, Williams & Sorensen, Michelle Marchetta Kenyon, Kevin D. Siegel; L + G, LLP, Dennis C. Beougher for Plaintiff and Appellant.

Griffith & Masuda, Roger K. Masuda, David L. Hobbs; Best, Best & Krieger, Gene Tanaka, Malathy Subramanian for Defendant and Respondent.


This appeal echoes a familiar cry from the American Revolution—"No taxation without representation!"  Here, a surcharge, not a tax, is the source of discontent.  The surcharge is imposed by defendant Turlock Irrigation District (TID) on electrical rates collected from customers in a service area outside TID's boundaries.  These outsiders are not eligible to vote in TID's elections or to sit on its board of directors and, therefore, are not represented in the rate-setting process.

Plaintiff City of Patterson (City or Patterson) sought to obtain voting rights for the disenfranchised customers by requesting that the Stanislaus Local Agency Formation Commission (Stanislaus LAFCO) approve an expansion of TID's boundaries through an annexation of the electrical service area. TID opposed City's request and, in accordance with procedures set forth in Government Code section 56857,[1] submitted a resolution to Stanislaus LAFCO requesting the annexation proceedings be terminated.

City responded by filing this lawsuit to challenge the validity of TID's resolution. City alleged that TID's resolution did not meet the requirements of section 56857. In particular, City argued that the water-related financial and service concerns described in TID's resolution were not legitimate because the application for the annexation of territory was limited to retail electrical service and would not expand TID's obligations to provide irrigation water. The trial court denied all of City's challenges and entered judgment in favor of TID.

Our review of the statutory provisions that govern City's application for TID's annexation of the territory where it provides electrical service leads us to conclude that City's application must include a plan for providing services to the annexed territory and that plan must describe the services *to be extended to* the affected territory. (§ 56653.) Here, City's application did not include such a plan and did not seek to extend any services to the affected territory. Therefore, the application failed to comply with the statutory requirements in section 56653. Because City's application is not a type of application authorized by statute, it cannot succeed. Therefore, it would be meaningless to allow City to challenge the validity of TID's resolution requesting termination of the annexation proceedings.

---

[1]All further statutory references are to the Government Code unless otherwise indicated.

In short, the purported evil that City's application seeks to redress—an irrigation district imposing charges for electrical services on customers who cannot vote in district elections because they reside outside the district's boundaries—has not been identified by the Legislature as a problem that the annexation of territory is intended to redress. The statutory scheme as presently enacted does not authorize the expansion of a district's territorial boundaries for the sole purpose of granting voting rights to consumers of the district's electrical services.

We therefore affirm the judgment in favor of TID.

## FACTS AND PROCEEDINGS

### TID's expansion of electrical service

In January 2002, Pacific Gas and Electric Company (PG&E) filed an application with the California Public Utilities Commission (PUC) for authorization to sell to TID certain electric distribution and transmission facilities in a portion of western Stanislaus County. Because the service area was outside TID's boundaries, the application to the PUC included a request that TID be allowed to provide extraterritorial service pursuant to Public Utilities Code section 9608.

In April 2003, the PUC approved PG&E's application and the proposed transaction. In accordance with the relevant agreements and the PUC's approval, TID was to operate the electric distribution system in an area that included City and adjacent rural areas and contained approximately 225 square miles (Westside area) with 5,450 existing accounts. One reason the PUC approved the application was California's policy of favoring service area agreements between electric corporations and districts that avoid duplication of facilities and service and the corresponding inefficient allocation of resources. In furtherance of this policy, PG&E and TID agreed not to serve retail electric customers in each other's service areas and not to build or operate transmission or distribution facilities in each other's service areas.

3.

When TID acquired the electrical service facilities in the Westside area, it made no attempt to annex the new service area or to expand its sphere of influence.

***City's annexation application***

Over eight years after the PUC's approval, Patterson's city council passed a resolution authorizing the city manager to file an application with Stanislaus LAFCO to change TID's boundaries to include the Westside area. The change of boundaries would allow residents of that area to be represented on TID's board of directors and to vote in future TID elections.

In August 2011, City filed an application for sphere of influence amendment, reorganization, and annexation to TID. The application stated: "Pursuant to Government Code §56654, the City of Patterson is seeking annexation/sphere of influence reorganization for **only** retail electrical service to Turlock Irrigation District for [the Westside area]." City's reason for the proposal was to provide residents of Westside "the right to be represented concerning their retail electrical charges." The application stated that residents of the Westside area were "subject to a surcharge imposed only on [Westside area] customers .…" The application asserted, in effect, that voting rights were important for these customers because the PUC "cannot regulate retail electrical utilities owned by a public entity, such as TID."

Stanislaus LAFCO accepted the application, placed the proposal on the agenda for its next meeting (for informational purposes only), sent a copy of the application to TID, and sent a letter to City about the application. The letter (1) listed additional items needed for the application, (2) identified items that needed clarification, and (3) stated that City would have to bear the expense of the municipal service review that section 56425 requires before a district's sphere of influence may be modified. The letter requested "clarification regarding a proposal affecting 'only retail electric service,' as this would suggest a divestiture of power for [TID] in the subject area, as defined under Government Code §56037.2. Should a proposal for a change of organization involve a

4.

divestiture of power, it shall *only* be initiated by the legislative body of that special district (§56654b)."[2]  The letter also indicated that TID had acted appropriately when it decided not to apply for a change of its boundaries:  "Stanislaus LAFCO has determined that changes to [TID's] electric service area do not require the application for change of organization or reorganization with LAFCO (see also:  Water Code §22120)."

### TID's resolution requesting termination

TID's board of directors reacted to City's application by adopting Resolution No. 2011-92.  The resolution stated that (1) an annexation of territory for a limited purpose, such as for "'only retail electrical service,'" was not authorized by state law; (2) the annexation of the Westside area would increase the jurisdictional area of TID from 308 square miles to 533 square miles; (3) TID would be required to provide irrigation water to farm land in the Westside area on the same basis as farm land with its current jurisdiction; (4) TID lacked the water conveyance infrastructure to service the Westside area; and (5) providing water to the additional area created service and financial concerns.

### City's lawsuit

TID's submission of its resolution to Stanislaus LAFCO caused City to initiate litigation.  On October 14, 2011, City filed a complaint with causes of action for declaratory relief, injunctive relief, ordinary mandamus, and administrative mandamus.  Pursuant to these causes of action, City sought to have Resolution No. 2011-92 set aside, invalidated, or otherwise declared void.

TID filed a demurrer and, in January 2012, the trial court overruled the demurrer to City's complaint.

---

[2]Section 56037.2 defines "divestiture of power" as "the termination of the power and authority to provide particular functions or classes of services within all or part of the jurisdictional boundaries of a special district."

*City's amended application*

In February 2012, City submitted an amended application to Stanislaus LAFCO that reduced the area of proposed annexation to approximately 133 square miles. Much of the land deleted from the amended application was irrigated by another water or irrigation district. The amended application continued to assert that City sought "annexation/sphere of influence reorganization for **only** retail electrical service ...."

In response to City's amended application, the board of directors of TID adopted Resolution No. 2012-32, which again requested termination of the annexation proceedings before Stanislaus LAFCO in accordance with section 56857. Resolution No. 2012-32 became the subject of this litigation when City amended its complaint to challenge the validity of that resolution.

Of particular interest to this appeal is the entry on Stanislaus LAFCO's preprinted application form that requests information about *the plan for providing public services*. City's amended application responded to that item as follows: "N.A. Retail electrical service[s] are already being provided by TID to [the Westside area]."[3]

*Trial court's decision*

In April 2013, the matter proceeded to a writ hearing and court trial. On April 22, 2013, the court issued a written decision on petition for writ of mandate. The court denied the petition for writ of mandate, stating:

> "The Court finds that TID's resolution is 'based upon written findings
> supported by substantial evidence in the record that the request is justified
> by a financial or service related concern' as required by Government Code
> § 56857(b). Specifically, the Court notes that although Government Code

---

[3]The absence of a plan for providing services within the affected territory raises a question about the interpretation and application of the provisions of section 56653 to the facts of this case. Subdivision (a) of section 56653 provides that, when a local agency submits a resolution of application for a change of organization, it also shall submit a plan for providing services within the affected territory. (See part IV.A, *post*.)

6.

§ 56886(j) and (v) permit the LAFCO to restrict annexation to electrical service, Patterson did not expressly request such a restriction in its application, and even if it had, the LAFCO would not be required to honor such a request. The imposition of limiting conditions under Government Code § 56886 is solely within the discretion of the LAFCO, and accordingly, Patterson's application potentially affects TID's obligations to provide water service. For this reason, the findings in TID's resolution are related to the 'subject of the application,' as required by Government Code § 56857(d)(2), even under Patterson's more restrictive reading of this requirement."

Subsequently, the superior court entered an order stating City's petition was denied in accordance with its written decision and directing that judgment be entered in TID's favor. The judgment was entered on June 24, 2013.

Three days later, City filed a notice of appeal.

## *DISCUSSION*

### I. *Standard of review*

Issues of statutory construction, as well as the application of that construction to a particular set of facts, are questions of law subject to independent review. (*Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 391; *Twedt v. Franklin* (2003) 109 Cal.App.4th 413, 417.)

### II. *Principles of statutory construction*

A reviewing court's fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. (*Honchariw v. County of Stanislaus* (2011) 200 Cal.App.4th 1066, 1073, citing *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977.) This task begins by scrutinizing the actual words of the statute, giving them their usual, ordinary meaning. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476; *Honchariw, supra*, at p. 1073.)

When the statutory language, standing alone, is clear and unambiguous—that is, has only one reasonable construction—courts usually adopt the plain meaning of that language. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 775.)

7.

Alternatively, when statutory language is "susceptible to more than one reasonable interpretation" (*Hoechst Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 519), it is regarded as ambiguous and there is no plain meaning. Where more than one reasonable interpretation is possible, courts must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute. (*Honchariw v. County of Stanislaus*, *supra*, 200 Cal.App.4th at p. 1073.)

Courts determine the apparent intent of the Legislature by reading the ambiguous language in light of the statutory scheme rather than reading it in isolation. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) In other words, the ambiguous language must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. (*Ibid.*) In addition, courts may determine the apparent intent of the Legislature by evaluating a variety of extrinsic aids, including the ostensible objects to be achieved by the statute, the evils to be remedied, the statute's legislative history, and public policy. (*Honchariw v. County of Stanislaus*, *supra*, 200 Cal.App.4th at p. 1073.)

### III. Background

#### A. Purpose and authority of a LAFCO

The Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 (Reorganization Act)[4] was enacted to encourage orderly growth and development in California. (§ 56001.) An "important factor" in achieving the policy goal of orderly growth and the efficient extension of government services is "the logical formation and

---

[4]The Reorganization Act (formerly the Cortese-Knox Local Government Reorganization Act of 1985) is codified at sections 56000 through 57550.

determination of local agency boundaries .…"  (*Ibid*.)  "Local agency" includes both cities and districts.**5**  (§ 56054.)

The Reorganization Act provides for the establishment of a local agency formation commission ("LAFCO") in each county.  (§§ 56325-56337.)  The county's LAFCO is the administrative agency charged with the responsibility of determining the boundaries of cities and districts.  (§ 56375 [powers and duties]; see § 56301 [purposes of LAFCO].)

A LAFCO consists of two members appointed by the county, two members appointed by the cities within the county, two members appointed by the special districts within the county, and one member to represent the general public who is appointed by the other commission members.  (§ 56325.)

A LAFCO's authority over the boundaries of local agencies includes the power to approve a change in the boundaries of an existing district.  (§ 56375, subd. (a)(1) [power to approve or disapprove proposals for changes of organization]; § 56021, subd. (c) ["'Change of organization'" includes annexation to city or district].)

### B.  *Annexation proposals*

#### 1.  *General provisions*

Part 3 of the Reorganization Act addresses LAFCO proceedings for a change of organization**6** or reorganization.  It contains six chapters consisting of sections 56650 through 56898.

Section 56650 provides that LAFCO "proceedings for a change of organization … may be initiated by petition or by resolution of application in accordance with this chapter."  The reference to "this chapter" means chapter 1 of part 3 of the Reorganization

---

**5**"'District'" and "'special district'" have the same definition:  "[A]n agency of the state, formed pursuant to general law or special act, for the local performance of governmental or proprietary functions within limited boundaries .…"  (§ 56036.)

**6**"'Change of organization'" includes an annexation to, or a detachment from, a city or a district.  (§ 56021, subds. (c)-(f).)

9.

Act.[7] City initiated the proceeding for a change in TID's organization by submitting a "resolution of application," not a petition. (§ 56650.)

Section 56654, subdivision (a) authorizes an "affected local agency" to propose a change of organization by adopting "a resolution of application." "'Affected local agency'" is defined to include any city "that contains, or would contain, or whose sphere of influence contains or would contain, any territory for which a change of organization is proposed .…" (§ 56014; see § 56054 ["'local agency'" includes cities].) Here, City qualifies as an "affected local agency" because its territory is within the Westside area that is proposed for annexation to TID. The statute's use of the term "any territory" means that City's boundaries need not include *all* the territory proposed for annexation.

Section 56652 specifies the information that must be included in an application form. Among other things, the application must contain the resolution of application, a statement of the nature of the proposal, and a map and description of the subject territory. (§ 56652, subds. (a)-(c).)

In addition, when a local agency proposes a change of organization, it "shall submit with the resolution of application a plan for providing services within the affected territory." (§ 56653, subd. (a); see § 14 ["'shall'" is mandatory].) The contents of the plan for providing services are specified in subdivision (b) of section 56653, which states the plan "shall include" a "description of the services to be extended to the affected territory."

### 2. *Third-party annexation proposals*

When a proposal to change a district's boundaries by annexing territory is initiated by a third party (i.e., a person other than the district itself or the county's LAFCO), that

---

[7]Chapter 1 consists of sections 56650 through 56668.5.

proposal is subject to section 56857. The text of subdivision (a) of section 56857[8] contains no explicit limitations on who may submit an annexation proposal or on the purpose of the proposal. For example, section 56857 does not state that (1) an annexation of territory must be for the purpose of extending the district's services to the applicant or (2) an annexation must not be motivated by political concerns.

When a LAFCO receives such an annexation proposal from a third party such as City, the proposal must be placed on the agenda for the LAFCO's next meeting for information purposes only and a copy of the proposal sent to the affected district. (§ 56857, subd. (a).)

The affected district may oppose the proposed annexation of territory in accordance with the procedures set forth in subdivision (b) of section 56857. Specifically, the district "may adopt and transmit to the [LAFCO] a resolution requesting termination of the proceedings." (§ 56857, subd. (b); see § 14 ["'may'" is permissive].)[9] The authority to request termination of the annexation proceeding is subject to the following limitation: "The resolution requesting termination of the proceedings shall be

---

[8]Subdivision (a) of section 56857 states: "Upon receipt by the [LAFCO] of a proposed change of organization or reorganization that includes the annexation of territory to any district, if the proposal is not filed by the district to which annexation of territory is proposed, the executive officer [of the LAFCO] shall place the proposal on the agenda for the next [LAFCO] meeting for information purposes only and shall transmit a copy of the proposal to any district to which the annexation of territory is requested."

[9]The full text of subdivision (b) of section 56857 states: "No later than 60 days after the date that the proposal is on the [LAFCO's] meeting agenda in accordance with subdivision (a), *any district* to which annexation of territory is proposed *may adopt and transmit to the [LAFCO] a resolution requesting termination of the proceedings*. The resolution requesting termination of the proceedings shall be based upon written findings supported by substantial evidence in the record that the request is justified by a financial or service related concern. Prior to the [LAFCO'S] termination of proceedings pursuant to subdivision (c), the resolution is subject to judicial review." (Italics added.)

11.

based upon written findings supported by substantial evidence in the record that the request is justified by a financial or service related concern." (§ 56857, subd. (b).)

When a LAFCO receives a timely resolution requesting termination and it has not been served with notice of a lawsuit challenging the resolution, the LAFCO "shall terminate the proceedings no sooner than 30 days from receipt of the resolution from the district." (§ 56857, subd. (c).)

In the present case, the trial court applied the provisions of section 56857 and concluded that TID's resolution requesting termination was valid.

## IV.     *Procedural challenges to City's application*

City's appeal from the trial court decision raises a number of questions of statutory interpretation concerning section 56857. Additional questions of statutory interpretation are presented by TID's contentions that City's proposal for the annexation of territory is void because of procedural defects and, as a result, no useful purpose would be served by this court invalidating TID's resolution and requiring the Stanislaus LAFCO proceeding to go forward. (See *Wilson v. Blake* (1915) 169 Cal. 449, 454 [writ will be issued only when useful purpose will be accomplished thereby].)

In *Wilson v. Blake*, *supra*, 169 Cal. 449, a candidate for commissioner filed a petition for writ of mandate to compel a city council to canvass the returns of an election. (*Id*. at p. 449.) The proceeding was heard in the Court of Appeal, which issued the writ of mandate. (*Id*. at p. 450.) The California Supreme Court reviewed the matter and then denied the writ and sustained the city council's demurrer to the petition. (*Id*. at p. 454.)

The Supreme Court concluded that the improper form of ballot used in the recall election rendered the election returns void for uncertainty. (*Wilson v. Blake, supra,* 169 Cal. at p. 453.) As a result, the court refused to issue a writ directing the city council to perform the public duty of canvassing the return because the city council would have declared the election returns void for uncertainty, an outcome of no benefit to the candidate for commissioner who sought the writ. To explain its refusal to issue a writ,

12.

the court stated that a writ of mandate is issued "to compel the performance not only of a public duty but of a useful public duty .…  [A court] will exercise its power to issue the writ only when some useful purpose may be accomplished thereby." (*Id*. at p. 454.) There was no point in requiring the city council to canvass the election returns that were void.  (See Civ. Code, § 3532 [the law does not require idle acts].)

Based on the rationale in *Wilson v. Blake*, *supra*, 169 Cal. 449, we will treat TID's contentions regarding procedural defects in City's application as presenting threshold questions that should be resolved before the validity of TID's resolution is addressed.

City has opposed this approach by arguing that this court should limit the issues it considers to the subject of its petition—that is, the validity of TID's resolution under section 56857.  City argues that the alleged procedural defects of its application are not ripe and this court should not prejudge issues not yet decided by the administrative agency with expertise in reviewing applications.  Based on considerations of efficiency and economy, for both the courts and the parties, we will follow the reasoning in *Wilson v. Blake*, *supra*, 169 Cal. 449, and address issues that would bar meaningful relief.

### A.     *Failure of application to request any new services*

One of the procedural defects raised by TID concerns the failure of City's application to provide for an extension of services within the new territory.  TID contends that a plan for such services is a necessary component of an application that proposes the annexation of territory.  We agree.

The statutory provisions relied upon by TID are sections 56654 and 56653.  Subdivision (d) of section 56654 provides that "a resolution for application shall contain all of the matters specified for a petition in Section 56700 and *shall be submitted with a plan for services prepared pursuant to Section 56653*."  (Italics added.)  Section 56653 provides in full:

> "(a) Whenever a local agency or school district submits a resolution of application for a change of organization or reorganization pursuant to this

13.

part, the local agency *shall submit* with the resolution of application *a plan for providing services within the affected territory*.

"(b) The plan for providing services *shall include* all of the following information and any additional information required by the [LAFCO] or the executive officer:

"(1) An enumeration and description of the *services to be extended to the affected territory*.

"(2) The level and range of those services.

"(3) An indication of when those services can feasibly be extended to the affected territory.

"(4) An indication of any improvement or upgrading of structures, roads, sewer or water facilities, or other conditions the local agency would impose or require within the affected territory if the change of organization or reorganization is completed.

"(5) Information with respect to how those services will be financed." (Italics added.)

The provisions in section 56653 use mandatory language when referring to the submission of a plan for providing services (i.e., "shall submit") and when referring to the contents of such a plan (i.e., "shall include all of the following information"). In TID's view, this mandatory language necessarily implies that an application does not comply with the statute if it does not propose an extension of services and include a plan that enumerates and describes "the services to be extended to the affected territory." (§ 56653, subd. (b)(1).)

We believe the meaning of the statutory phrase "the services to be extended to the affected territory" can be illustrated by contrasting it with a phrase that refers to "the services, *if any*, to be extended to the affected territory." Had the Legislature included "if any" in the version it enacted, it would have indicated that a plan describing the extension of services was not required for all applications that propose a change in organization. The Legislature's decision not to express any limitations on the mandatory phrases "shall

14.

submit" and "shall include" in section 56653 indicates an intention that the items following those phrases are necessary (not optional) for compliance with the statute.

City's reply brief did not address TID's arguments regarding the application of section 56653 to its amended application. During oral argument, City contended that Stanislaus LAFCO should determine the validity of City's application in the first instance.

City's amended application addressed the plan for providing public services simply by stating: "N.A. Retail electrical service[s] are already being provided by TID to [the Westside area.]"

City's position that the requirement for a plan is not applicable to its application implies that the requirement is optional, rather than mandatory. This interpretation of section 56653, however, is contrary to the plain meaning of the language used and is contrary to the general principle that courts should not add language to a statute. (See Code Civ. Proc., § 1858 [in construing statute, judges should not insert what Legislature has omitted].)

Therefore, we conclude that an application for the annexation of territory must include a plan for providing services to the affected territory, and that plan must describe the services to be extended to the affected territory. If the application does not propose to extend services to the affected area, then it is unable to satisfy the mandatory terms of section 56653 and, therefore, cannot be considered a valid and complete application. (See § 56658, subds. (c) & (g) [incomplete applications].)

Because City's application, in the form presented, does not comply with the statute, and it appears that City will not be able to cure the noncompliance by providing the required plan, nothing useful could be accomplished by this court issuing a writ of mandate directing TID to set aside its resolution requesting termination. Such a writ could not lead to Stanislaus LAFCO validly approving City's application proposing an

15.

annexation of territory by TID because the application fails to comply with the Reorganization Act. (*Wilson v. Blake*, *supra*, 169 Cal. at p. 454.)

Therefore, we will uphold the trial court's decision to deny City's petition for writ of mandate.

### B.     Other issues

TID also argued that (1) City's application was void based on other alleged procedural defects, (2) the trial court lacked subject matter jurisdiction,[10] (3) its resolution requesting termination of the proceedings complied with section 56857, and (4) approval of City's application would result in a divestiture of the district's power in violation of the limitations contained in section 56654, subdivision (b). In view of our conclusion about the meaning and application of section 56653 to the application submitted by City, we need not reach these additional issues.

## DISPOSITION

The judgment entered on June 24, 2013, is affirmed. TID shall recover its costs on appeal.

_____

Sarkisian, J.[*]

WE CONCUR:

_____

Kane, Acting P.J.

_____

Peña, J.

---

[10]In particular, we do not reach the issue whether the PUC's authorization of TID to provide extraterritorial service to the Westside area pursuant to Public Utilities Code section 9608 deprived the trial court of jurisdiction to consider the validity of TID's resolution. (See Pub. Util. Code, § 1759 [jurisdiction to review, correct, or annul order of PUC].)

[*]Judge of the Superior Court of Fresno County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.