Filed 4/26/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>STUART ANDREW ELDER,<br><br>Defendant and Appellant. | H042189<br>(Monterey County<br>Super. Ct. No. SS132220A) |

A jury convicted defendant Stuart Andrew Elder of gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)); driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a)); and driving with a blood-alcohol concentration of 0.08% or greater causing injury (Veh. Code, § 23153, subd. (b)). The jury found true allegations that he inflicted great bodily injury (Pen. Code, § 12022.7, subd. (a)) and inflicted bodily injury to multiple victims (Veh. Code, § 23558). Defendant was sentenced to 13 years in prison: two years on the Vehicle Code section 23153 charge; three consecutive three-year terms for three separate Penal Code section 12022.7(a) enhancements; and a consecutive two-year term for the Vehicle Code section 23558 enhancement.

Defendant contends the trial court erred by (1) denying his motion to suppress evidence of his blood-alcohol chemical test results; (2) denying his motion to compel discovery of records relating to other collisions at the same location; (3) excluding evidence of a chemical test result indicating a high blood-alcohol level of the victim driver; (4) failing to adequately instruct the jury on the principle of causation; and

(5) imposing a consecutive two-year enhancement under Vehicle Code section 23558 in addition to the enhancements under Penal Code section 12022.7, subdivision (a).

We find no error affecting defendant's conviction, but for the reasons explained we find the trial court erred in imposing a consecutive two-year term for the Vehicle Code section 23558 enhancement. We will therefore reverse the judgment and remand for resentencing.

## I. TRIAL COURT PROCEEDINGS

### *Factual Background*

Defendant was driving home after drinking multiple glasses of wine at a restaurant with friends. While on a narrow two-lane road with a 25 mile per hour speed limit, he accelerated to over 70 miles per hour, veered momentarily into the opposing lane, and collided with an oncoming car. The two occupants of the other car were killed instantly, and the passenger riding in defendant's vehicle was injured. Following the collision, defendant's blood-alcohol concentration was measured to be 0.17 percent, over twice the legal limit.

### *Defendant's Motion to Suppress*

Before trial, defendant moved under Penal Code section 1538.5 to suppress evidence of the chemical test result showing his blood-alcohol level. The grounds for the motion were that defendant did not consent to the chemical testing of his blood and no other United States Constitution Fourth Amendment exception justified the warrantless search. The court held a hearing, at which the California Highway Patrol officer who arrested defendant testified about the events leading to the arrest and obtaining a blood sample from defendant.

The officer testified that upon arriving at the scene of the traffic collision he approached the defendant, who had been identified as the driver of one of the vehicles. Defendant admitted he had been drinking alcohol, and a preliminary alcohol screening device indicated the presence of alcohol in his system. The officer advised defendant he

was being placed under arrest, and he was then transported by ambulance to the hospital for medical treatment with the officer following behind.

While at the hospital, the officer advised defendant of the implied consent law (Veh. Code, § 23612) and requested that he submit to a chemical test. Defendant agreed to submit to a blood test, and signed a form indicating his consent before the blood sample was drawn. The form has a handwritten notation of the time it was signed and the person drawing the blood signed a form stating the time the draw was performed. The times recorded on those forms indicate the blood was drawn four minutes before the consent form was signed. The officer believes the times were recorded that way because he wrote the time on the form based on his wristwatch reading and the technician who wrote the time of the blood sample based it on the time shown by a wall clock. According to the officer, the blood sample was drawn after defendant signed the form consenting to the blood draw.

The trial court found that defendant was placed under arrest at the scene of the incident, signed a consent form for the blood test, and then the blood was drawn. After making those findings, the court denied the motion to suppress.

### Discovery Dispute

Using the procedure provided for by Penal Code section 1054.5, defendant informally requested a number of items from the prosecution, including "[a]ll local law enforcement reports regarding accidents at the [relevant intersection] in the last seven years." Defense counsel later narrowed that request to only accident reports maintained by the California Highway Patrol. The prosecution refused to provide any accident reports, and the defendant filed a motion to compel discovery. The trial court denied the motion, finding that information related to other accidents at the location of defendant's collision was not relevant to any issues in the case.

*Evidentiary Issues and Jury Instructions*

The prosecution moved in limine for an order excluding evidence relating to contributory negligence by the driver of the vehicle with which defendant collided, including any evidence of that driver's blood-alcohol level. Defendant opposed the motion, arguing that evidence of the other driver's blood-alcohol level was relevant to the issue of causation and was therefore admissible.

Three different postmortem chemical testing techniques that were performed on the deceased driver apparently yielded three different results, one showing a 0.19 percent blood-alcohol concentration, one a 0.08 percent, and the other a 0.07 percent. While hearing argument from both counsel on the issue of the admissibility of the test results, the court expressed its view that "at a minimum, the court could allow in evidence that there was alcohol in her system[,]" but that the court was unlikely to allow evidence of the specific blood-alcohol level out of concern that doing so would necessitate the undue consumption of time and require a "mini-trial on blood alcohol samples from a deceased person and fighting as to what the actual BA was and taking days and days of testimony to have experts opine as to how … a non-living body processes alcohol … ." The court further commented, "I'm not saying that's what's going to happen. I'm just trying to understand where we're going with this."

After argument on the prosecution's in limine motion, the court stated: "In regards to the alcohol, I'm going to do some research on that. I am concerned about having mini-trials on a blood-alcohol level, but I'm going to do some research on that. We'll have a decision long before you do your opening statements."

The court never ruled on the issue of whether a specific blood-alcohol level was admissible, because the prosecutor and defense counsel announced they would stipulate that the other driver's blood-alcohol level was 0.07 percent. That stipulation was read to the jury at trial.

Defendant requested that in addition to the pattern jury instructions for the charged offenses, the jury be instructed with CACI No. 411, an instruction designed for use in civil cases which reads, "Every person has a right to expect that every other person will use reasonable care [and will not violate the law], unless he or she knows, or should know, that the other person will not use reasonable care [or will violate the law]." The court declined to give CACI No. 411. Before closing arguments, defense counsel confirmed that he had not requested any other additional instructions.[1]

### Trial and Sentencing

At trial, the prosecution presented evidence that defendant and his girlfriend were at a restaurant in Pebble Beach with friends for several hours just before the traffic collision. Defendant was drinking wine. Around 7:00 p.m., they got into defendant's Cadillac Escalade SUV and he began driving toward his home.

The road defendant traveled is a narrow two-lane roadway separated by a double yellow line. Defendant's car was headed south and the car of driver Sharon Daly and passenger Linda Larone was traveling north on the same road.

The prosecution presented extensive accident reconstruction evidence to establish that defendant was driving over 70 miles per hour when his tires lost contact with the roadway entering a curve, sending it drifting into the path of the oncoming car. At the moment of impact, defendant's vehicle was traveling around 70 miles per hour and the other car around 22 miles per hour. The speed limit for the road is 25 miles per hour.

Ms. Daly and Ms. Larone were both killed by the impact of the collision. Defendant's passenger was injured, suffering a broken wrist and a torn labrum in her hip.

---

[1] The record reflects defense counsel actually stated the court had refused to give only the one "BAJI jury instruction" he requested in his trial brief. Both parties agree counsel meant to refer to CACI No. 411, as that is the instruction requested in the trial brief. We accept the parties' characterization of the record on this point.

A Highway Patrol officer who responded to the scene contacted defendant and noticed an odor of alcohol. The officer used a preliminary alcohol screening device to test defendant's breath, and it showed the presence of alcohol in defendant's system. Defendant was placed under arrest and taken to the hospital to be evaluated for injuries. Blood drawn from defendant approximately an hour after the collision contained a blood-alcohol concentration of 0.17 percent.

Defendant testified that he drank two or three glasses of wine on the evening of the collision, but did not feel impaired. While driving home, he saw a deer and accelerated and swerved into the oncoming lane to avoid it. He described attempting to accelerate to avoid the other car but it cut him off, leading to the collision.

The jury found defendant guilty of two counts of gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)); one count of driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a)), and one count of driving with a blood-alcohol level of 0.08 percent or more causing injury (Veh. Code, § 23153, subd. (b)). The jury found true an allegation that defendant had inflicted great bodily injury upon his passenger (Pen. Code, § 12022.7, subd. (a)) in the commission of the offense of gross vehicular manslaughter while intoxicated. The jury also found true allegations that defendant inflicted great bodily injury on three separate victims (his passenger, Ms. Daly, and Ms. Larone) under Penal Code section 12022.7, subdivision (a) and inflicted bodily injury on more than one victim under Vehicle Code section 23558, in the commission of the offense of driving under the influence causing injury. Those same allegations were found true with regard to the same three victims in connection with the offense of driving with a blood-alcohol level of 0.08 percent or more causing injury.

The court sentenced defendant to the middle term of two years in prison on count 3, driving under the influence of alcohol causing injury. It imposed three consecutive three-year terms for the three great bodily injury enhancements on that charge, and a consecutive two-year term for inflicting bodily injury on multiple victims.

The great bodily injury enhancement charged in connection with the gross vehicular manslaughter while intoxicated charge was stricken[2] and sentence on all other counts and enhancements was imposed but stayed.

## II. DISCUSSION

**A.    DENIAL OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Defendant argues the trial court erred in denying his motion to suppress evidence of his blood-alcohol level approximately one hour after the collision because he did not consent to his blood being drawn and no other exception to the Fourth Amendment search warrant requirement applied.

Under Penal Code section 1538.5, a criminal defendant may move to suppress evidence obtained as the result of an improper search by law enforcement, such as a search violating the Fourth Amendment to the United States Constitution.  Our standard of review of an order denying a motion to suppress evidence " 'is well established.  We defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' " (*People v. Garry* (2007) 156 Cal.App.4th 1100, 1106, citing *People v. Glaser* (1995) 11 Cal.4th 354, 362.)

Here, the trial court found defendant was placed under lawful arrest at the scene of the collision, transported to the hospital, and then signed a form indicating he consented to a blood draw.  The court specifically found the testimony of the officer who testified at the hearing on the motion to suppress to be credible, and the officer stated the blood was drawn only after defendant signed the consent form.  The court's findings regarding

---

[2] At sentencing, the prosecution agreed that the great bodily injury enhancement charged in connection with the vehicular manslaughter charge was no longer viable under *People v. Cook* (2015) 60 Cal.4th 922.  *Cook* was decided during the pendency of the trial in this case and held that a great bodily injury sentencing enhancement cannot attach to a murder or manslaughter conviction.  (*Id.* at p. 924.)

defendant's consent to the blood draw are supported by evidence that is "reasonable, credible, and of solid value"—the officer's testimony—and therefore meet the substantial evidence standard. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 161.) Defense counsel attempted to impeach the officer's credibility with excerpts of his prior testimony about the blood draw from a Department of Motor Vehicles administrative hearing, some of which was arguably inconsistent with what the officer recalled at the suppression hearing. But " 'it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.' " (*Id.* at p. 162.)

The trial court's finding that defendant consented in advance to the blood draw ends the inquiry regarding a Fourth Amendment violation, because a defendant's free and voluntary consent to a blood draw constitutes an exception to the Fourth Amendment search warrant requirement. (*People v. Harris* (2015) 234 Cal.App.4th 671, 690; see also, *Florida v. Jimeno* (1991) 500 U.S. 248, 250–251 ["[I]t is no doubt reasonable for police to conduct a search once they have been permitted to do so."].) As a result, defendant's discussion of *Missouri v. McNeely* (2013) 569 U.S. ____, 133 S.Ct. 1552, and similar cases involving nonconsensual blood draws has no application here.

We find no error in the denial of the motion to suppress the blood test result. The trial court's factual findings are supported by substantial evidence and the court correctly determined based upon those findings that no Fourth Amendment violation occurred.

**B.    DENIAL OF DEFENDANT'S MOTION TO COMPEL DISCOVERY OF OTHER COLLISION RECORDS**

Defendant asserts the trial court erred when it denied his motion to compel discovery of California Highway Patrol records relating to other automobile collisions at the same location in the seven years preceding the collision in this case. He argues he

was entitled to disclosure of the records under Penal Code section 1054 et seq. governing discovery in criminal cases.

We review a ruling on a criminal defendant's discovery motion under the abuse of discretion standard. (*People v. Prince* (2007) 40 Cal.4th 1179, 1233.) To determine whether the trial court abused its discretion in this instance, we look first to the text of Penal Code section 1054.1, the statute describing what materials the prosecution is obligated to disclose to a defendant. It provides that the prosecuting attorney shall disclose to the defendant any information in the possession of the prosecution or the investigating agencies in the following categories: (a) the names and addresses of persons the prosecutor intends to call as witnesses at trial; (b) statements of all defendants; (c) all relevant real evidence seized or obtained as a part of the investigation of the offenses charged; (d) the existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial; (e) any exculpatory evidence; (f) relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts.

Defendant does not articulate which of the above-listed categories he believes past collision records fall under, but the only plausible choice is the category described by subdivision (e) of the statute, "any exculpatory evidence." Under this provision, the prosecution must provide to a defendant all exculpatory evidence, not limited to the "material" exculpatory evidence required under federal constitutional standards established by *Brady v. Maryland* (1963) 373 U.S. 83. (*People v. Cordova* (2015) 62 Cal.4th 104, 121.)

Defendant ultimately limited his discovery request to records maintained by the California Highway Patrol, which is the agency that arrested defendant and investigated the collision and is therefore an investigating agency that would be required to disclose any information in its possession coming within the categories described by the statute.

(See Pen. Code § 1054.1 [providing for discovery of information the prosecution knows to be within the possession of "the investigating agencies."].)  Defendant's entitlement to the requested discovery accordingly hinges on whether the information can properly be characterized as exculpatory.

Defendant argues that records of other collisions are relevant to his defense and therefore exculpatory for two reasons:  the fact of other collisions in the same area would undermine the prosecution's position that the defendant was grossly negligent, and would undermine the prosecution's position that the legal cause of the collision in this case was the defendant's conduct.  Neither reason persuades us that information related to other collisions is exculpatory.

If indeed there was a history of collisions at the site, that fact would not dispel the gross negligence of driving three times the roadway's posted speed limit while entering a curve.  To the contrary, a disproportionate number of collisions would tend to show the roadway was difficult to drive under typical conditions, making it even more dangerous to drive in the manner defendant did.  Nor would the fact of other collisions necessarily aid a defense based on causation.  A defendant's conduct is deemed not the legal cause of harm only when the harm is caused by an intervening act that is not reasonably foreseeable.  (*People v. Schmies* (1996) 44 Cal.App.4th 38, 46.)  Defendant asserts that evidence of other collisions would show "repeated mistakes" made by drivers coming from the same direction as the victim driver, and therefore a greater likelihood that she, too, made such a mistake.  But it is just as arguable that mistakes made by other drivers in the same situation would make a similar mistake by the victim driver more foreseeable, which would weaken a causation defense.

We conclude the requested discovery was not exculpatory and therefore did not fall under any category of information the prosecution was required to disclose under the statute.  Accordingly, the trial court did not abuse its discretion in denying defendant's motion to compel.

Even assuming error in denying the discovery of records related to other collisions, the denial of a defendant's motion to compel discovery is subject to harmless error analysis under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836, and would be a basis for reversal only where it is reasonably probable that the error affected the trial result. (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1135, disapproved on another ground by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) On this record, with the prosecution having presented undisputed evidence that defendant drove over 70 miles per hour on a narrow roadway with a 0.17 percent blood-alcohol level, veered into an oncoming lane of traffic, and collided head-on with the victims' car, we would find the error harmless.

## C. EXCLUSION OF EVIDENCE OF VICTIM DRIVER'S BLOOD-ALCOHOL CONCENTRATION

Defendant contends the trial court erred by excluding evidence that one of three postmortem chemical tests performed on the victim driver showed a blood alcohol concentration of 0.19 percent. But the trial court made no such ruling.

The prosecution did move in limine to exclude all evidence of the victim's contributory negligence, a motion that included in its scope evidence of the victim's blood-alcohol concentration. At the time that motion was argued, the court clearly indicated it would be taking the matter under submission because it wanted to conduct further research on the blood alcohol issue, and that it would issue a ruling on the motion before opening statements.

Before the court made a ruling, defense counsel announced the parties had reached an agreement that the victim's blood-alcohol concentration was measured at 0.07 percent, and that stipulation was read to the jury during the trial.

A party to a criminal action can, with binding effect, stipulate to both evidentiary matters and to the existence or nonexistence of facts. (*Leonard v. City of Los Angeles* (1973) 31 Cal.App.3d 473, 476.) "A binding stipulation admitting evidence may be

made, even if such evidence is otherwise inadmissible," and "[w]hen a proposed stipulation is accepted by the other side, such stipulation becomes binding upon the court so long as it is not illegal or contrary to public policy." (*Id*. at p. 477.)

Once the parties agreed to handle the issue of the admissibility of the victim's blood-alcohol concentration by presenting to the jury the fact that it had been measured at 0.07 percent, the trial court no longer needed to rule on the prosecution's motion to exclude such evidence. Moreover, the court could not properly have allowed admission of evidence indicating a 0.19 percent blood alcohol because it was bound by the evidentiary stipulation of the parties.

Having voluntarily entered into the stipulation, the doctrine of invited error precludes defendant from now challenging the manner in which the victim blood-alcohol issue was handled. (See *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212 ["Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error."].) But more to the point, because the trial court never ruled on the motion as a result of the stipulation, there is nothing on this issue for defendant to challenge on appeal. (*People v. Crabtree* (2009) 169 Cal.App.4th 1293, 1319 [failure to obtain a ruling on evidentiary matter forfeits issue on appeal].)

We note that defense counsel's decision to enter into the stipulation was not without reasonable strategic underpinning. Taking the trial court's comments during argument at face value (as counsel likely did), it appeared the court was inclined to admit evidence that the victim had alcohol in her system, but to exclude evidence of any specific blood-alcohol concentration. The stipulation was a tactical compromise given that scenario: While it eliminated the possibility of introducing evidence that the victim was significantly impaired with a blood-alcohol level above the legal limit, it also mitigated the risk that the court would not allow any evidence of a specific blood-alcohol

level, which could leave the jury believing the amount of alcohol in the victim's system was negligible.

## D. JURY INSTRUCTIONS REGARDING CAUSATION

Defendant argues the trial court failed to adequately instruct the jury on the principle of causation. We review the adequacy of jury instructions by determining whether the trial court "fully and fairly instructed on the applicable law." (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1089.) In making that determination, we consider the instructions as a whole and assume that jurors are intelligent persons who are capable of understanding and correlating all instructions that are given. (*Ibid.*)

Defendant's instructional error argument is threefold: (1) the court should have given the instruction he requested, CACI No. 411; (2) after declining to give CACI No. 411, the court should have given an instruction that addressed superseding intervening causation more specifically than the pattern instructions it did give; and (3) the court exacerbated the failure to properly instruct on causation by improperly responding to a jury question. We address each of these contentions in turn.

We find no error in failing to give the jury instruction defendant requested (CACI No. 411), because that instruction states a principle of law not applicable to the case and therefore the trial court properly refused it. Contrary to defendant's argument that the instruction was necessary to adequately acquaint the jury with the law of causation, CACI No. 411 is not a causation instruction.[3] Entitled "Reliance on Good Conduct of Others," it is a pattern jury instruction designed for use in civil negligence cases involving a plaintiff suing a defendant for failing to prevent harm caused by a third party. The principle it espouses is essentially that a defendant will not be liable for harm caused by a third party's negligent or criminal conduct, unless the third party's conduct was foreseeable: "Every person has a right to expect that every other person will use

---

[3] The civil jury instructions regarding causation in negligence cases are CACI Nos. 430 through 435.

reasonable care [and will not violate the law], unless he or she knows, or should know, that the other person will not use reasonable care [or will violate the law]."

Defendant's request to instruct the jury on this principle of civil negligence law was particularly inapposite given that another party's contributory negligence is not a defense to criminal liability. (See *People v. Schmies*, *supra*, 44 Cal.App.4th at p. 46.) The requested instruction would have served only to confuse the jury regarding the relevant issues.

Defendant argues that even if CACI No. 411 was not an appropriate causation instruction, the court should have given some other (unspecified) instruction regarding the principle of superseding causation. (See *People v. Cervantes* (2001) 26 Cal.4th 860, 871 ["In general, an independent intervening cause will absolve a defendant of criminal liability. However, in order to be 'independent' the intervening cause must be 'unforeseeable … an extraordinary and abnormal occurrence, which rises to the level of an exonerating, superseding cause.' "].) But superseding causation is explained in the instructions that were given to the jury. (See CALCRIM No. 590 ["An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A *natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence."].)

Because defendant never requested any additional instructions (aside from CACI No. 411), he has forfeited any claim of error for failure to further instruct. (*People v. Ngo* (2014) 225 Cal.App.4th 126, 149 ["a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language."].) Before the jury was instructed, defense counsel confirmed on the record that he had not

requested any additional jury instructions or clarifying language aside from CACI No. 411.

Defendant cites *People v. Fudge* (1994) 7 Cal.4th 1075, 1110, for the proposition that when a defendant proposes a jury instruction that is conceptually appropriate but contains some incorrect language, the court has a duty to tailor the instruction so it is acceptable rather than denying it outright. In *Fudge*, the defendant proposed an instruction relating to the reliability of expert witness testimony which the court found overly argumentative. Rather than ordering the argumentative language removed or revising the instruction to be more neutral, the court declined to give it at all.

We are not confronted here with a situation where the proposed instruction was a substantively correct statement of the applicable law with some problematic language; rather, defendant's proposed instruction, CACI No. 411, stated a legal principle that was entirely inapplicable to the case. The court had no duty under these circumstances to rewrite the instruction to reflect a principle that was correct. (*People v. Gonzales* (1992) 8 Cal.App.4th 1658, 1664, citing *People v. Hall* (1984) 157 Cal.App.3d 538, 546 [a court has no duty to correct a proposed instruction that is incorrect].)

Even if defendant's proposed instruction had correctly stated the relevant law regarding causation, the trial court was not required to give it because the jury was already adequately instructed on superseding causation with the pattern instructions for the elements of each charged offense. As we have noted, CALCRIM No. 590 was given to the jury and stated that defendant could be found guilty only if the death or injury was the natural and probable consequence of his conduct, meaning that nothing unusual intervened. In closing argument, defense counsel quoted the language of that instruction verbatim in urging that the victim driver turning into the other lane constituted "something unusual" that should absolve defendant of criminal responsibility. There was no failure to instruct regarding the concept of superseding causation.

Defendant also takes issue with the trial court's response to a question from the jury during deliberations. On the first day of deliberations, the court received a note from the jury inquiring as follows: "May the behavior of the female driver be considered in determining whether his behavior was grossly negligent?" The court responded, in writing: "It is up to you to determine the weight and significance, if any, of the evidence. Gross negligence is defined in the instructions you have received." Defendant argues that the court's response was inadequate and that it should have instead responded with a further instruction on superseding causation.

When the original instructions are themselves full and complete, the trial court has discretion to determine what additional explanation is sufficient to satisfy a jury request for further information. (*People v. Yarbrough* (2008) 169 Cal.App.4th 303, 316–317.) A court need not always elaborate on the standard instructions. (*Ibid.*) As we have discussed, the original instructions here were full and complete. The court's response to the jury question pointed the jury toward the relevant instructions, and was in no way an abuse of discretion.

### E. THE IMPOSITION OF A CONSECUTIVE TWO-YEAR SENTENCE UNDER VEHICLE CODE SECTION 23558

Defendant contends the trial court erred in imposing both a sentencing enhancement under Vehicle Code section 23558 for injuring multiple victims and an enhancement under Penal Code section 12022.7, subdivision (a) for inflicting great bodily injury on the same victims. He argues that imposition of both enhancements violates the Penal Code section 654 prohibition against multiple punishments for a single act.[4]

---

[4] Penal Code section 654, subdivision (a) provides, in relevant part, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

This issue was addressed in *People v. Arndt* (1999) 76 Cal.App.4th 387 (*Arndt*), with that court holding the imposition of a Vehicle Code section 23558 multiple victim enhancement in addition to a Penal Code section 12022.7, subdivision (a) great bodily injury enhancement violated the statutory proscription against multiple punishments. (*Arndt*, *supra*, at p. 397.)  But the *Arndt* court was construing a prior version of Vehicle Code section 23558, not the amended version in effect at the time defendant's conduct occurred.  Accordingly, we must decide whether amended Vehicle Code section 23558 supports the same result.

### 1. 1999 Amendment to Vehicle Code Section 23558

The version of Vehicle Code section 23558 at issue in *Arndt* (then numbered Vehicle Code section 23182) read as follows:  "Any person who proximately causes bodily injury or death to more than one victim in any one instance of driving in violation of Section 25153 of this code or in violation of Section 191.5 or paragraph (3) of subdivision (c) of Section 192 of the Penal Code, shall upon a felony conviction, receive an enhancement of one year in the state prison for each additional injured victim."  The court found that imposing that enhancement in addition to the enhancement under Penal Code section 12022.7, subdivision (a) for great bodily injury to the same victims violated Penal Code section 654 because the trial court "erroneously employed the single injury suffered by each of the [victims] to impose two injury-related enhancements."  (*Arndt*, *supra*, 76 Cal.App.4th at p. 397.)

In 1999 (about a month before the *Arndt* decision was issued), the Legislature amended Vehicle Code section 23558 to add the language that currently appears in the statute.  The amended language provides that a defendant shall receive a one-year enhancement for each one of multiple victims "notwithstanding subdivision (g) of Section 1170.1 of the Penal Code."[5]

---

[5] Penal Code section 1170.1, subdivision (g) provides: "When two or more enhancements may be imposed for the infliction of great bodily injury on the same victim

The Supreme Court has instructed in *People v. Ahmed* (2011) 53 Cal.4th 156, 163 (*Ahmed*) that if the statutes providing for a sentencing enhancement supply the answer as to whether multiple enhancements may be imposed, a court should "simply apply the answer found in the specific statutes and not consider the more general [Penal Code] section 654." We therefore turn first to the plain language of Vehicle Code section 23558 to see if it expressly applies in addition to an enhancement for inflicting great bodily injury on the same victims.

Nothing in the text of Vehicle Code section 23558 explicitly allows its application in addition to a Penal Code section 12022.7, subdivision (a) enhancement imposed for the same victim, nor does it mention Penal Code section 654. But the language inserted by the 1999 amendment does direct that the enhancement should be applied "notwithstanding subdivision (g) of Section 1170.1 of the Penal Code." It is this language referring to Penal Code section 1170.1, subdivision (g) which the Attorney General argues permits the enhancement in addition to the great bodily injury enhancements imposed for each of the three victims in this case.

### 2. Penal Code Section 1170.1, Subdivision (g)

The question we must answer to determine whether the amended text of Vehicle Code section 23558 allows for a multiple victim enhancement in addition to a separate great bodily injury enhancement is: What did the Legislature intend by saying that Vehicle Code section 23558 should apply "notwithstanding" Penal Code section 1170.1, subdivision (g)? In making that inquiry, we examine the statutes with the primary goal of ascertaining the intent of the Legislature so as to effectuate the purpose of the law. (*People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 709.) "Where more than one

in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense. This subdivision shall not limit the imposition of any other enhancements applicable to that offense, including an enhancement for being armed with or using a dangerous or deadly weapon or a firearm."

reasonable interpretation is possible, courts must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute." (*City of Patterson v. Turlock Irrigation Dist.* (2014) 227 Cal.App.4th 484, 492.)

Vehicle Code section 23558 (formerly section 23182) was originally enacted in 1985 in response to the Supreme Court's decision in *Wilkoff v. Superior Court* (1985) 38 Cal.3d 345, which held that an intoxicated driver who injures multiple persons in a single collision could be charged with only one count of driving under the influence causing injury. (See *Arndt*, *supra*, 76 Cal.App.4th at pp. 394–395 [discussing history of Vehicle Code section 23182].) The statute's purpose was to increase the available punishment for an intoxicated driver who injures multiple victims after the *Wilkoff* decision precluded more than one charge for the underlying offense. (*Arndt,* at pp. 394–395.)

Penal Code section 1170.1, subdivision (g) was enacted in 1997, and its articulated purpose was to "permit the sentencing court to impose both one weapon enhancement and one great-bodily-injury enhancement for *all* crimes," as opposed to only certain enumerated crimes under then-existing law. (*Ahmed*, *supra*, 53 Cal.4th at p. 168 [discussing history of Penal Code section 1170.1, subdivision (g) and analyzing legislative history materials].) Before the enactment of Penal Code section 1170.1, subdivision (g), a defendant charged with multiple enhancements for inflicting great bodily injury and use of a firearm or other specified weapon could receive only the greatest of those enhancements, except in the case of certain crimes. (*Ahmed*, at p. 168.) Penal Code section 1170.1, subdivision (g) changed the law to provide that although only one great bodily injury enhancement could be applied, other enhancements, such as for personal use of a weapon, could be imposed in addition.

Viewing the statute in light of its intended purpose, it appears the 1999 amendment to Vehicle Code section 23558 was intended to clarify that, despite the

language in Penal Code section 1170.1, subdivision (g) which allowed only one great bodily injury enhancement for the same offense, multiple bodily injury enhancements (i.e., a separate consecutive one-year enhancement for each victim) could still be imposed under Vehicle Code section 23558.[6] This amendment ensured that courts would not interpret Penal Code section 1170.1, subdivision (g) as limiting the ability to impose more than a single one-year enhancement under Vehicle Code section 23558. It preserved the increased punishment for intoxicated drivers who injure multiple victims that was intended by the Legislature.

Had the Legislature intended to allow for Vehicle Code section 23558 enhancements to apply where *another* sentencing enhancement is imposed based on the same conduct—despite the general prohibition against multiple punishments found in Penal Code section 654—it could have said so. Instead, it specifically limited the 1999 amendment to add only the language "notwithstanding subdivision (g) of Section 1170.1 of the Penal Code." The term "notwithstanding" signals the Legislature's intent that a statute apply without prevention or obstruction by the other referenced statute. (*People v. Sanders* (2012) 55 Cal.4th 731, 744.) But it is not Penal Code section 1170.1, subdivision (g) that would prevent the imposition of the Vehicle Code section 23558 enhancements here. It is Penal Code section 654 that does so.

This interpretation of the 1999 amendment to Vehicle Code section 23558 is consistent with the amendment's legislative history. The Bill Analysis for Assembly Bill 1236, which amended Vehicle Code section 23558, states, "This bill clarifies existing law relating to imposing separate enhancements for additional victims injured in certain vehicular crimes." (Off. of Sen. Floor Analyses, 3d reading analysis of Assem.

---

[6] Vehicle Code section 23558 provides: "A person who proximately causes bodily injury or death to more than one victim … shall, upon felony conviction, … receive *an enhancement* of one year in the state prison *for each additional* injured victim." (Italics added).

Bill No. 1236 (1999–2000 Reg. Sess.) September 2, 1999, pp. 1–2).  The author's "Arguments in Support" of the bill read, "this bill makes technical, non-substantive changes to the Penal, Health and Safety and Vehicle Codes.  The intent of this bill is to correct cross-reference errors, eliminate redundant language, and to conform code sections with recent changes ... .  No one will serve any additional days in jail because of AB 1236.  It is a very straightforward technical cleanup bill.  The measure is necessary in light of several overlapping changes in law."  (*Ibid.*)

Given the expressed intent to merely clarify existing law by making "technical, non-substantive changes," we cannot agree with the Attorney General that the effect of the 1999 amendment was to change the law in a manner that would allow the Vehicle Code section 23558 multiple victim enhancements to be imposed in addition to great bodily injury enhancements for the same victims.  (See *City of Patterson v. Turlock Irrigation Dist.*, *supra*, 227 Cal.App.4th at p. 492 ["(c)ourts may determine the apparent intent of the Legislature by evaluating a variety of extrinsic aids, including the ostensible objects to be achieved by the statute, the evils to be remedied, the statute's legislative history, and public policy."].)

*Arndt*, *supra*, 76 Cal.App.4th 387, interpreted the existing law before Vehicle Code section 23558 was amended, and it held the law did not allow for both a great bodily injury enhancement and a Vehicle Code section 23558 enhancement for the same victims.  We agree with *Arndt*'s interpretation of the law as it existed at the time.  Given the Legislature's stated intent to "clarif[y] existing law," we necessarily find the 1999 amendment to Vehicle Code section 23558 does not have the effect of allowing the enhancement to be imposed in addition to a great bodily injury enhancement.  To find otherwise would interpret the amendment to substantively change, not merely clarify, existing law.

### 3.  Penal Code Section 654

Given the narrow scope of the 1999 amendment and its "technical, non-substantive purpose," we must consider whether imposing both a multiple victim enhancement and a great bodily injury enhancement for the same victims violates the Penal Code section 654 prohibition against multiple punishments for the same act.

*Arndt*, *supra*, 76 Cal.App.4th 387, held that imposing the Vehicle Code section 23558 enhancement on top of a great bodily injury enhancement violates Penal Code section 654.  As we have discussed, we find nothing in the language added to the statute in 1999 that would compel a different conclusion.  And since *Arndt* was decided, the Supreme Court decided *Ahmed*, *supra*, 53 Cal.4th 156, using similar reasoning to hold that multiple sentence enhancements for the same "aspect" of a crime are barred under Penal Code section 654.  Both of the enhancements in this case—great bodily injury and bodily injury to multiple victims—were imposed based on the same aspect of the crime, namely the injuries inflicted, as opposed to the manner in which the crime was committed, or some other aspect.  Accordingly, imposition of the consecutive two-year prison term under Vehicle Code section 23558 in this case violated Penal Code section 654.

## III.    DISPOSITION

The judgment is reversed.  The case is remanded for resentencing in a manner that

does not impose both an enhancement under Penal Code section 12022.7, subdivision (a) and an enhancement under Vehicle Code section 23558 for the same victims.

_____

Grover, J.

**WE CONCUR:**

_____

Rushing, P. J.

_____

Premo, J.

| | |
|---|---|
| Trial Court: | Monterey County Superior Court, Case No.: SS132220A |
| Trial Judge: | Hon. Pamela L. Butler |
| Attorneys for Plaintiff/Respondent: The People | Xavier Becerra<br>  Attorney General of California<br>Gerald A. Engler<br>  Chief Assistant Attorney General<br>Jeffrey M. Laurence<br>  Senior Assistant Attorney General<br>Bruce M. Slavin<br>  Deputy Attorney General .<br>David H. Rose<br>  Deputy Attorney General |
| Attorneys for Defendant/Appellant: Stuart Andrew Elder | Charles M. Bonneau, Jr.<br>  Attorney at Law<br>  Under Appointment by the Court of Appeal |