Filed 7/30/21  P. v. Vargas CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE DOLORES VARGAS,<br><br>    Defendant and Appellant. | B304488<br><br>(Los Angeles County<br>Super. Ct. No. NA110684) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Curtis B. Rappe, Judge.  Affirmed and remanded with directions.

Law Offices of Michael R. Kilts, Michael R. Kilts and Joseph P. Farnan for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jose Dolores Vargas appeals the judgment entered following a jury trial in which he was convicted of four counts of premeditated attempted murder (Pen. Code,[1] §§ 664/187; counts 1–4), four counts of assault with a semiautomatic firearm (§ 245, subd. (b); counts 5–8), and one count of shooting at an occupied motor vehicle (§ 246; count 9).  The jury found true the charged criminal street gang allegations (§ 186.22, subd. (b)), the great bodily injury enhancement allegation (§ 12022.7, subd. (a)), and the firearm use allegations (§ 12022.53, subds. (b), (c), (d) & (e); § 12022.5, subd. (a)).  The trial court sentenced appellant to a term of 128 years to life.

Appellant contends:  (1) Reversal is required based on the trial court's refusal to instruct the jury that a defendant's mere presence at the scene of a crime is insufficient for conviction; (2) the trial court committed reversible error when it admitted evidence of another shooting that occurred two days before the charged crimes; (3) the cumulative effect of these errors rendered the trial fundamentally unfair, requiring reversal; and (4) the matter should be remanded to the trial court to reconsider exercising its discretion to strike the firearm allegations pursuant to Senate Bill No. 620.  We reject appellant's contentions and affirm the judgment of conviction.

Appellant was 18 years old when he committed the offenses in this case and contends he is entitled to a limited remand for a proceeding pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) to preserve evidence for a future youth offender parole hearing in accordance with section 3051, subdivisions (d) through (f).  We agree and remand the matter to the trial court

---

[1] Undesignated statutory references are to the Penal Code.

2

for a full *Franklin* proceeding for the purpose of affording both parties the opportunity to make a record of information relevant to appellant's future youth offender parole hearing.  In addition, the trial court is directed to correct the abstract of judgment to accurately reflect the court's oral pronouncement of sentence.

## FACTUAL BACKGROUND

On the night of November 11, 2018, Alicia Melgar and Giovani Garcia were hanging out at Normandale Park when two men dressed in black approached them.  At that time, Normandale Park was the claimed territory of the East Side Torrance gang, one of whose rivals was the Varrio Harbor City gang.  The park had been the site of multiple gang shootings and was tagged with East Side Torrance gang graffiti.

Melgar heard someone say, "what's up, homie?" or "what's up, fool?" and looked over to see two men in black hoodie sweatshirts standing five to ten feet away.  One of the men was heavyset and the other taller and thin.  Melgar saw the heavyset man fire his gun at her, and a witness saw both men extend their arms to shoot directly at Melgar and Garcia.  Melgar suffered a gunshot wound to her leg.

Los Angeles Police Officers Valery Vargas and Matthew Clymer were driving an unmarked SUV close to Normandale Park when they heard gunshots.  As the officers pulled into the parking lot they saw two men in dark clothing—one heavyset, the other thin—running through the park toward the police vehicle.  Both men fired at the SUV, and one gunshot struck the vehicle.  Both officers returned fire.  The heavier suspect, identified as appellant, was hit by gunfire and fell to the sidewalk.  The thinner man continued running and escaped.

On the ground not far from where appellant had fallen, police found a nine-millimeter Luger semiautomatic handgun with the serial number scratched off. The bullet that hit the police SUV came from that gun, as did two expended nine-millimeter shell casings found on the ground in the area where Melgar had been shot, and two other nine-millimeter shell casings found along the path the men had traveled.

Shortly after the shootings, Varrio Harbor City gang member Julian Herrera showed up in the emergency room of a Kaiser Permanente hospital near Normandale Park. He was dressed in a black hoodie and dark jeans, and had a gunshot wound in the back of his shoulder. Following his release from the hospital, Herrera was arrested and placed in a jail cell with an undercover police officer posing as an inmate. During their recorded conversation, which was played to the jury, Herrera said that he and his friend "Jose" had committed a walk-up shooting at night in "the enemy's park." According to Herrera, police started shooting at them, and he and Jose returned fire. Jose got shot in the leg or chest, and was unable to stand when Herrera tried to help him up. Herrera said he had used a revolver in the shooting which was "in the ocean," but he believed that police had probably found a gun on Jose.

A few days after the shootings, police searched appellant's home and recovered a Houston Astros hat with gang writing from appellant's bedroom. The prosecution gang expert testified that the hat and writing were associated with the Varrio Harbor City gang. The expert opined that the Normandale Park shooting and another shooting on November 9, 2018, in the same area involving the same nine-millimeter firearm were both committed

4

in association with and for the benefit of the Varrio Harbor City gang.

## DISCUSSION

I. **The Trial Court Properly Refused the Defense Request for a Pinpoint Instruction on the Aiding and Abetting Principle of Mere Presence**

A. *Relevant background*

Appellant did not deny he was present in Normandale Park on November 11, 2018, when the shootings occurred. Rather, it was the defense theory of the case that after someone else fired shots at Melgar and Garcia, appellant had run away from the gunfire. Mistaking the officers who had started firing from an unmarked police car for gang members seeking payback for the shooting, appellant also tried to run away from the police. According to the defense, police planted the gun, bullet casings, and a live round found at the scene to cover up the wrongful shooting of appellant.

Based on this theory, defense counsel requested a pinpoint instruction that evidence of appellant's mere presence at the scene of the crime is insufficient for conviction. Defense counsel argued that because there was no evidence appellant dropped or ever had a gun in his possession, he was entitled to an instruction that his mere presence at the park could not be used against him. The trial court denied appellant's instruction request.

B. *Appellant was not prosecuted as an aider and abettor and was therefore not entitled to a mere presence instruction*

Appellant contends the trial court committed reversible error by refusing to instruct the jury that evidence of a

5

defendant's mere presence at the scene of a crime is insufficient by itself to sustain a conviction. The trial court properly denied appellant's instruction request, even though it did so for the wrong reason.[2]

In resolving whether a trial court has erred in giving or refusing to give particular jury instructions, we consider the instructions as a whole to determine whether the trial court " ' "fully and fairly instructed on the applicable law." ' " (*People v. Elder* (2017) 11 Cal.App.5th 123, 134.) A trial court does not err by declining to instruct on a principle of law that is not applicable to the case. (*People v. Gutierrez* (2009) 45 Cal.4th 789, 815 [no error in refusing instruction concerning jury's evaluation of child witness testimony where child not called as a witness]; *Elder*, at p. 135.) Furthermore, in conducting our examination we " ' "assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." ' " (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

The mere presence principle on which appellant sought instruction is found in 1 CALCRIM No. 401, "Aiding and Abetting: Intended Crimes." The instruction begins by identifying the elements required for the People to prove the defendant guilty of a crime based on a theory of aiding and

---

[2] The trial court denied the requested instruction on the ground that other instructions adequately informed the jury that a defendant's mere presence at the crime scene was insufficient evidence of culpability as an aider and abettor. However, appellant was not prosecuted under a theory of aiding and abetting, and the trial court was mistaken that there were other instructions on the topic.

6

abetting.[3] The instruction goes on to state that if the prosecution meets its burden of proving all of the elements, the defendant need not have been present when the crime was committed to be convicted as an aider and abettor. On the other hand, if the jury concludes the defendant was present at the scene of the crime or failed to prevent it, "[the jury] may consider that fact in determining whether the defendant was an aider and abettor. However, *the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him or her an aider and abettor*." (1 CALCRIM No. 401, italics added.)

It is clear from the title and the specific language of the instruction that it applies only to the jury's consideration of whether the defendant may be found guilty of a crime *as an aider and abettor*. However, where the prosecution does not proceed under an aiding and abetting theory, the instruction has no relevance and would serve only to confuse the jury. Here, the prosecution's theory of the case against appellant was that he was a direct perpetrator of the crimes, not an aider and abettor. Accordingly, the jury was not given an aiding and abetting theory of liability in the instructions on any of the charged offenses,[4] nor

_____

[3] Those elements are: "1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime." (1 CALCRIM No. 401.)

[4] Although the jury was instructed it could find the *gang*-related firearm enhancement true based on aiding and abetting

7

were aiding and abetting principles discussed by either party in closing argument.

The trial court had no duty to instruct that the defendant's mere presence at the scene of the crime is insufficient to establish guilt as an aider and abettor because that principle of law had no application to the case. (*Elder*, *supra*, 11 Cal.App.5th at p. 135 [no error in failing to give requested instruction where instruction states a principle of law not applicable to the case].)

Appellant nevertheless argues he was entitled to the instruction because there was substantial evidence in support of the defense theory that appellant was merely present at the park and had nothing to do with the shootings that took place there. But the existence of substantial evidence supporting the defense theory did not entitle appellant to an instruction on an irrelevant principle of law. Moreover, the trial court had no duty to give a modified version of the instruction that simply omitted any reference to aiding and abetting. By stating the obvious fact that mere presence at the scene of a crime is insufficient to prove the defendant is the *perpetrator* of the crime, such a pinpoint instruction would be more argumentative than informative in

principles (1 CALCRIM No. 1402), the instruction made clear in the first sentence that the jury first had to convict appellant of attempted murder *and* find that he committed the crime for the benefit of or in association with a criminal street gang before it could consider the vicarious firearm enhancement. (§ 12022.53, subd. (e)(1); see *People v. Garcia* (2002) 28 Cal.4th 1166, 1171 ["Section 12022.53, subdivision (e)(1), imposes vicarious liability under this section on aiders and abettors who commit crimes in participation of a criminal street gang"].)

8

light of the instructions stating the elements of the crimes the People had the burden to prove.

"Although instructions pinpointing the defense's legal theories might be appropriate, a defendant is not entitled to instructions that simply highlight facts favorable to him." (*People v. Jackson* (2014) 58 Cal.4th 724, 768; *People v. Chhoun* (2021) 11 Cal.5th 1, 51; *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1159.)  Indeed, a trial court properly denies a request for a particular instruction "if the instruction is argumentative [citation], misstates the law [citation], or duplicates other instructions [citation]." (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 851.)

Finally, we reject appellant's contention that the prosecutor's mistaken belief that other instructions already addressed the topic of the requested instruction precludes respondent's argument on appeal that the proposed instruction was not required.  The prosecutor's opinion was not binding on the trial court (*People v. Avena* (1996) 13 Cal.4th 394, 416, fn. 1), nor does it affect the propriety of the court's ruling, which we uphold if correct on any legal ground.  (*People v. Brooks* (2017) 3 Cal.5th 1, 39 (*Brooks*) [" ' "we review the ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm" ' "]; *People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12 [same].)

## II. The Trial Court Did Not Abuse Its Discretion in Admitting Evidence of a Prior Shooting Involving the Same Gun that Was Used in the Current Offenses

### A. *Relevant background*

On November 9, 2018, two days before the charged offenses in this case, two East Side Torrance gang members were shot multiple times in East Side Torrance territory near Normandale Park. One of the victims reported that two or three people had jumped out of a car and yelled, " 'Are you from Tramps?[5] '" before opening fire. Police recovered five expended nine-millimeter bullet casings from the scene, which were determined to have been fired from the same firearm found near appellant on the sidewalk after the shootings in the instant case. There was no evidence appellant had been involved in the November 9 shooting.

Before opening statements, the court ruled that it would admit evidence of the prior shooting on the ground that it was relevant to the gang allegation. During the prosecution's case, defense counsel argued that the evidence should be excluded because it was improper propensity evidence, irrelevant and unduly prejudicial. The court again ruled the evidence admissible, emphasizing that the same gun had been used in both the prior and the current shootings.

### B. *The evidence was relevant and not unduly prejudicial*

Appellant contends the trial court abused its discretion in admitting evidence of the prior shooting, which he asserts was

---

[5] "Tramps" is a derogatory term for East Side Torrance gang members when used by rival gangs.

irrelevant to proving a possible motive for the charged offenses and was unduly prejudicial as propensity or other crimes evidence.  We disagree.

" 'Relevant evidence' " includes evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."  (Evid. Code, § 210; *People v. Sanchez* (2019) 7 Cal.5th 14, 54.)  While only relevant evidence is admissible (Evid. Code, § 350), all relevant evidence is admissible unless prohibited by statute.  (Evid. Code, § 351; *People v. Young* (2019) 7 Cal.5th 905, 930.)  " ' "The test of relevance is whether the evidence tends 'logically, naturally, and by reasonable inference' to establish material facts such as identity, intent, or motive." ' "  (*Young*, at p. 931.)  And a " 'trial court enjoys broad discretion in determining the relevance of evidence and in assessing whether concerns of undue prejudice, confusion, or consumption of time substantially outweigh the probative value of particular evidence.' "  (*Sanchez*, at p. 54; Evid. Code, § 352.)  On appeal, " [w]e review a trial court's decision to admit or exclude evidence "for abuse of discretion, and [the ruling] will not be disturbed unless there is a showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice." ' "  (*Young*, at p. 931.)

Appellant contends that the evidence of the prior shooting "had no tendency in reason to prove appellant's motive to commit the charged November 11, 2018, shootings."  But even if this evidence was not relevant to establishing motive, it did tend to prove other disputed issues in the case.  Specifically, evidence about a gang-related shooting just two days before the charged crimes in which the same gun was used was highly relevant to countering the defense theory that the police planted the gun, as

11

well as to support the gang enhancement allegation by showing that appellant had access to the firearm that had just been used in another gang shooting.  Again, the trial court's admission of the evidence on a different ground does not affect the analysis: We uphold the ruling if it was correct on any ground.  (*Brooks*, *supra*, 3 Cal.5th at p. 39.)

Appellant also maintains that the evidence of the prior shooting constituted propensity or other crimes evidence, which should have been excluded as character evidence under Evidence Code section 1101, subdivision (a).  But there was no evidence that appellant was involved in the prior shooting, nor any indication the trial court admitted the evidence under Evidence Code section 1101, subdivision (b).[6]  The admission of this evidence thus did not implicate Evidence Code section 1101's limitations on the admission and use of character evidence at all. Instead, its sole relevance was to establish a connection between appellant's gang and the gun used in the current offense and thereby connect appellant with the charged shootings.

The trial court did not abuse its discretion by refusing to exclude as unduly prejudicial the prior shooting evidence under Evidence Code section 352 either.  Under Evidence Code section

---

[6] Evidence Code section 1101 generally proscribes admission of "evidence of a person's character or a trait of his or her character . . .  when offered to prove his or her conduct on a specified occasion."  (Subd. (a).)  However, the admission of evidence of prior criminal conduct or other bad acts is not prohibited when such evidence is "relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident . . .) other than his or her disposition to commit such an act."  (Subd. (b).)

352, evidence that is relevant and otherwise admissible may nevertheless be excluded if its probative value is substantially outweighed by the probability that its admission will require an undue consumption of time, will confuse or mislead the jury, or it is unduly inflammatory or poses a substantial risk of undue prejudice.  (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 407; *People v. Merriman* (2014) 60 Cal.4th 1, 74 [court has broad discretion "to exclude even relevant evidence if it determines the probative value of the evidence is substantially outweighed by its possible prejudicial effects"].)

The testimony concerning the prior shooting itself conveyed very little detail and was quite brief, consisting of just five pages of trial transcript.  There was nothing inflammatory about that testimony or the rest of the evidence relating to the November 9 shooting, which concerned evidence collection and ballistics analysis of the expended bullet casings from the two crime scenes.  And the evidence linking the firearm used in these two shootings was not unduly prejudicial.  As our Supreme Court has repeatedly explained:  " ' " 'In applying [Evidence Code] section 352, "prejudicial" is not synonymous with "damaging." ' " [Citation.]  " ' "[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case." ' "  [Citation.] The "prejudice" which [Evidence Code] section 352 seeks to avoid is that which " ' "uniquely tends to evoke an emotional bias against the defendant as an individual *and which has very little effect on the issues*." ' " '  (*People v. Cage* (2015) 62 Cal.4th 256, 275.)"  (*People v. Chhoun, supra*, 11 Cal.5th at p. 29.)

## III.  There Was No Cumulative Error

Appellant's failure to demonstrate instructional error or any abuse of discretion in the trial court's admission of evidence

of the prior shooting means that his claim of cumulative error also fails.

## IV. The Trial Court Was Aware of and Properly Exercised Its Discretion in Declining to Strike the Firearm Enhancements

At the conclusion of appellant's sentencing hearing the trial court stated, "And I will just indicate for the record, because it's within the court's discretion now to strike the firearm allegations, and the court feels on the facts of this case that that would be an abuse of the court's discretion and I will not strike them." Appellant asserts that the trial court abused its discretion by failing to consider mitigating factors from his background, character, and prospects when it declined to strike the firearm enhancements under Penal Code section 1385. Because the probation report contained very little information and there was no other evidence about appellant's background and character before the court, he argues the case must be remanded to enable the trial court to reconsider exercising its discretion to strike the firearm allegations pursuant to Senate Bill No. 620. We disagree.

In 2017, the Legislature enacted Senate Bill No. 620 (2017–2018 Reg. Sess.), which added subdivision (h) to section 12022.53 and gave trial courts discretion "in the interest of justice pursuant to Section 1385 and at the time of sentencing, [to] strike or dismiss an enhancement otherwise required to be imposed by this section." (§ 12022.53, subd. (h); *People v. Pearson* (2019) 38 Cal.App.5th 112, 116 (*Pearson*).) We review the trial court's decision to strike or retain a firearm enhancement under section 1385 for abuse of discretion. (*Pearson*, at p. 116; see *People v. Carmony* (2004) 33 Cal.4th 367, 373 (*Carmony*).)

14

As our Supreme Court has explained, in conducting our review "we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at pp. 376–377; *Pearson*, *supra*, 38 Cal.App.5th at p. 116.)

A trial court is required to consider all relevant factors including any factors in mitigation at sentencing, and unless the record affirmatively reflects otherwise, will be deemed to have done so. (Cal. Rules of Court, rule 4.409; *Pearson*, *supra*, 38 Cal.App.5th at p. 117; *People v. King* (2010) 183 Cal.App.4th 1281, 1322.) Of course, a defendant is entitled to sentencing decisions made in the exercise of the trial court's " 'informed discretion,' " and when a sentencing court was unaware of its discretion, remand for resentencing is appropriate unless the record clearly indicates that the court would have made the same choice had it been aware of its discretion. (*People v. Barber* (2020) 55 Cal.App.5th 787, 814; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) Even where the record is ambiguous, however, " ' "a trial court is presumed to have been aware of and

15

followed the applicable law." ' " (*People v. Bryant, Smith and Wheeler*, *supra*, 60 Cal.4th at p. 398; *Barber*, at p. 814.)

The record in this case leaves no doubt that the trial court was aware of its discretion to strike or retain the firearm enhancements and chose the latter.  And contrary to appellant's assertion, the probation report was not lacking information about appellant from which the court could make an informed determination "in light of the nature and circumstances of his present felonies[, prior convictions], and the particulars of his background, character, and prospects" about whether appellant was deserving of the exercise of the court's discretion under section 1385.  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)  According to the probation report, appellant was born in January 2000, making him 18 years old at the time of the offenses, he has no criminal history, and there is no indication appellant abuses drugs or has any mental or physical health problems.  Appellant made no effort to provide the court with additional mitigating factors or argue for an exercise of discretion under section 1385 in his favor.  In short, appellant merely speculates that additional information is out there that would persuade the court that it would *not* be an abuse of discretion to strike the firearm enhancements.  Speculation, however, is an insufficient basis for rebutting the presumption that the trial court properly exercised its discretion in retaining the firearm enhancements "on the facts of this case."

## V. Appellant Is Entitled to a *Franklin* Proceeding

Appellant contends he is entitled to remand for a *Franklin* proceeding because he was 18 years old when he committed the offenses in this case.

Under section 3051, during the 25th year of his sentence appellant will be entitled to a youth offender parole hearing to provide him a meaningful opportunity to obtain release. (§ 3051, subd. (e)). (§ 3051, subds. (a)(1), (b)(3), (e); *Franklin*, *supra*, 63 Cal.4th at p. 283.) When it determines whether to grant appellant parole at that hearing, the Board of Parole Hearings will be required to "give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law." (§ 4801, subd. (c); *Franklin*, at p. 283.) In order to enable the Board to fulfill its mandate, our Supreme Court requires that youth offenders like appellant be afforded an opportunity to preserve evidence of youth-related factors to be considered in their eventual parole hearing. (*Franklin*, at p. 284; *In re Cook* (2019) 7 Cal.5th 439, 449–450 (*Cook*).)

Under *Franklin*, that opportunity takes the form of a proceeding in which the trial court may " 'receive submissions and, if appropriate, testimony pursuant to procedures set forth in section 1204 and rule 4.437 of the California Rules of Court, and subject to the rules of evidence. [The defendant] may place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors.' " (*Cook*, *supra*, 7 Cal.5th at p. 450; *Franklin*, *supra*, 63 Cal.4th at p. 284.) Noting that such information is more easily collected at or near the time of the juvenile's offense rather than decades later when memories have

faded, records have been lost or destroyed, and/or family and community members may have relocated or passed away, *Franklin* remanded the case to allow the defendant "sufficient opportunity to put on the record the kinds of information that sections 3051 and 4801 deem relevant at a youth offender parole hearing." (*Franklin*, at p. 284; *Cook*, at p. 459.)

Here, the Attorney General opposes remand not on the basis of ineligibility, but because " '[t]he record contains no indication that' appellant was denied 'an adequate opportunity to make a record of mitigating youth-related evidence as contemplated in *Franklin*.' " (Citing *People v. Medrano* (2019) 40 Cal.App.5th 961, 967 (*Medrano*).) According to respondent, since appellant failed to act on the opportunity he has already had to present mitigating evidence regarding his youthfulness when he committed his crimes, his sole remedy is to file a motion in the superior court pursuant to section 1203.01.[7] (See *Cook*, *supra*, 7 Cal.5th at pp. 446–447; *Medrano*, at p. 968.) We disagree.

---

[7] Section 1203.01 provides in relevant part:

"(a) Immediately after judgment has been pronounced, the judge and the district attorney, respectively, may cause to be filed with the clerk of the court a brief statement of their views respecting the person convicted or sentenced and the crime committed, together with any reports the probation officer may have filed relative to the prisoner. The judge and district attorney shall cause those statements to be filed if no probation officer's report has been filed. The attorney for the defendant and the law enforcement agency that investigated the case may likewise file with the clerk of the court statements of their views respecting the defendant and the crime of which he or she was convicted. Immediately after the filing of those statements and

18

In *Cook,* a 17-year-old juvenile offender convicted in 2007 and sentenced to life with the possibility of parole and five consecutive terms of 25 years to life filed a petition for writ of habeas corpus in which he sought a *Franklin* proceeding to make a record of mitigating evidence based on his youth. (*Cook, supra,* 7 Cal.5th at p. 447.) Our Supreme Court held that "an offender entitled to a hearing under sections 3051 and 4801 may seek the remedy of a *Franklin* proceeding even though the offender's sentence is otherwise final." (*Cook,* at p. 451) The court went on to hold that the appropriate vehicle for such relief in the first instance is a motion filed in superior court pursuant to section 1203.01 and not a petition for writ of habeas corpus. (*Id.* at pp. 457–458). In so holding, the court explained that section 1203.01 "gives the trial court authority to conduct an evidence preservation proceeding as envisioned in *Franklin*" for juvenile offenders whose convictions are final. (*Cook,* at p. 452.) Indeed, "[t]he purpose of section 1203.01 parallels that of a *Franklin* proceeding," and nothing in the statute prohibits a trial court from conducting a *Franklin*-style evidence preservation proceeding at any time after conviction. (*Id.* at pp. 453–454.)

---

reports, the clerk of the court shall mail a copy thereof, certified by that clerk, with postage prepaid, addressed to the Department of Corrections and Rehabilitation at the prison or other institution to which the person convicted is delivered. The clerk shall also mail a copy of any statement submitted by the court, district attorney, or law enforcement agency, pursuant to this section, with postage prepaid, addressed to the attorney for the defendant, if any, and to the defendant, in care of the Department of Corrections and Rehabilitation, and a copy of any statement submitted by the attorney for the defendant, with postage prepaid, shall be mailed to the district attorney."

*Cook* did not address a juvenile offender's right to seek the remedy of a *Franklin* proceeding on direct appeal when the defendant simply failed to exercise his or her right to the proceeding in the trial court. Nor did the high court hold that a motion under section 1203.01 is an appropriate means of obtaining *Franklin* relief for a juvenile offender whose conviction is not final. Rather, recognizing the importance of *Franklin*'s evidence preservation function in the youth offender parole eligibility scheme established under sections 3051 and 4801, the *Cook* decision merely identified the procedural mechanism by which an offender serving a final sentence may return to court to obtain the functional equivalent of a *Franklin* proceeding.

Appellant's conviction, before us on direct appeal, is not final. And appellant will be entitled to a youth offender parole hearing in the 25th year of his incarceration. Yet the Attorney General would have us deny appellant's request for a *Franklin* remand and require him to file a separate motion under section 1203.01 seeking the exact same relief. The superior court would have no discretion to deny such a motion, for as *Cook* noted, "it would be improper for the court to preclude a juvenile offender's chance to supplement the record with information relevant to his eventual youth offender parole hearing." (*Cook*, *supra*, 7 Cal.5th at p. 453.)

Thus, requiring such an additional procedural step in this case would serve no purpose other than to delay the information collection and preservation proceeding to which appellant is entitled under both *Franklin* and *Cook*. Under such circumstances, the interests of justice dictate that the cause be remanded to permit appellant to make a record of information relevant to a future youth offender parole hearing under section

3051 in accordance with *Franklin*.[8]  (See § 1260 [an appellate court "may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances"].)

## VI. The Abstract of Judgment Must Be Amended

The abstract of judgment incorrectly reflects that appellant was sentenced to life without the possibility of parole for each count of attempted murder.  In fact, appellant was sentenced to 128 years to life as stated by the court in its oral pronouncement of judgment and reflected in the minute order.

"When there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls."  (*People v. Walz* (2008) 160 Cal.App.4th 1364, 1367, fn. 3; see also *People v. Jones* (2012) 54 Cal.4th 1, 89 [" '[a]n abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize' "].)  Accordingly, the abstract of judgment must be corrected to conform to the trial court's oral pronouncement of judgment.

---

[8] In this regard, we reject the reasoning of *Medrano, supra,* 40 Cal.App.5th 961, which held that a defendant who fails to take the opportunity to make a record of mitigating youth-related evidence at trial forfeits the right to seek remand for a *Franklin* proceeding on appeal and must proceed by way of a section 1203.01 motion.  (*Id*. at pp. 967–968 & fn. 9.)

21

**DISPOSITION**

The matter is remanded to the trial court to afford both parties the opportunity to make a record of information relevant to appellant's eventual youth offender parole hearing under Penal Code section 3051, as set forth in *People v. Franklin* (2016) 63 Cal.4th 261. The trial court is further directed to correct the abstract of judgment to reflect appellant's 128-years-to-life sentence and to forward a certified copy of the abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

HOFFSTADT, J.

22