Filed 5/23/24  P. v. Pina CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

<table>
<tr><td>THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PABLO PINA,<br><br>    Defendant and Appellant.</td><td>H050931<br>(Santa Clara County<br>Super. Ct. No. 93070)</td></tr>
</table>

In 1986, defendant Pablo Pina was convicted by a jury of first degree murder. In 2022, Pina petitioned for resentencing under Penal Code section 1172.6, requesting that the trial court vacate his conviction because he could not presently be convicted of murder due to recent changes to the law.[1]  The trial court declined to issue an order to show cause after determining that the trial evidence showed that Pina was ineligible for relief.  On appeal, Pina argues that the trial court's reliance on "uncontroverted" trial evidence amounted to fact-finding impermissible at the prima facie stage of a section 1172.6 resentencing proceeding.  We conclude that although the trial evidence

---

[1] Unspecified statutory references are to the Penal Code.  We note that in 2022, the Legislature renumbered section 1170.95 to section 1172.6 without substantive change to the text of the statute.  (Stats. 2022, ch. 58, § 10, eff. June 30, 2022.)  Although Pina's petition references section 1170.95, we refer to the current version of the statute for clarity.

was part of Pina's record of conviction, the trial court erred by considering the weight and credibility of the evidence and reverse the trial court's order denying the petition for resentencing.

## I.     BACKGROUND

### A.     *Pina's Convictions*

In 1986, Pina was convicted of first degree murder (§ 187, subd. (a)) and first degree burglary (§ 459).  As to both offenses, the jury found true the allegation that Pina personally used a firearm.  The trial court sentenced Pina to 25 years to life consecutive to 13 years as to the murder conviction and imposed an eight-year sentence for burglary that was stayed under section 654.

### B.     *The Petition for Resentencing*

In August 2022, Pina, representing himself, petitioned for resentencing alleging that he could not presently be convicted of murder or attempted murder under current law.  Pina attached no exhibits to his petition and made no specific factual allegations.

The People opposed Pina's petition, arguing that he was ineligible for relief because he was the direct perpetrator of the felony murder.  Attached to the People's opposition were the abstract of judgment for Pina's convictions, the jury's verdict forms, the jury instructions, this court's opinion in Pina's direct appeal (*People v. Pina* (Sept. 21, 1988, H001869) [nonpub. opn.]), and the reporter's transcript of the trial.

### C.     *Evidence from the Trial Transcript*

In 1984, Henrietta Cruz owed someone $120, which she had used to buy PCP she later smoked with John Mendoza.  To repay the debt, Cruz and Mendoza agreed that Mendoza would buy more PCP, this time with Cruz selling some and taking the rest as commission.

Carol Oswald, Pina's ex-girlfriend, agreed to help Cruz.  After selling the PCP, Cruz and Oswald went to Mendoza's apartment to give him the proceeds.  The two women left Mendoza's apartment but returned, this time with Pina and Ronnie Garcia, to

2

collect Cruz's commission. According to Oswald, Garcia had said that he would bring a gun to scare Mendoza if he did not give Cruz her share.

Cruz and Oswald went in to speak with Mendoza, who told them to leave. As Cruz and Oswald left, Cruz saw Pina standing near the doorway with a gun in his hand. Cruz heard a gunshot but was unable to see what had happened. Before the gunshot, Oswald saw Mendoza lying on the steps with Pina on top of him with the gun. None of the witnesses testified that they saw Pina fire the gun.

Asked if he had shot Mendoza, Pina told Cruz and Oswald yes. Cruz later heard Pina say to someone over the phone that he had " 'hit him in the head.' "

### D. *The Jury Instructions and Closing Argument*

Based on the jury instructions as given, the prosecution's sole theory of murder was felony murder. The jury was instructed that "[t]he crime of murder is the unlawful killing of a human being which occurs during the commission or attempt to commit a felony inherently dangerous to human life." And that "[i]n order to prove the commission of the crime of murder, each of the following elements must be proved: one, that a human being was killed; two, that the killing was unlawful; and, three, that the killing occurred during the commission or attempt to commit a felony inherently dangerous to human life. Burglary and robbery are felonies inherently dangerous to human life." The jury was further instructed that "[t]he unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs as a result of the commission of or attempt to commit the crime of burglary or robbery and where there was in the mind of the perpetrator the specific intent to commit such crime, is murder of the first degree."

As to the personal use enhancement, the jury was instructed that "[t]he defendant may be found to have personally used a firearm during the commission of such [a] felony only if the proof shows beyond a reasonable doubt that such defendant personally used a firearm at such time." The jury was told that "used a firearm" means "to display a

firearm in a menacing manner, intentionally to fire it or intentionally to strike or hit a human being with it."

In closing argument, the prosecutor argued that the jury was not required to find that Pina had an intent to kill and should find him guilty of first degree murder under the felony murder rule. The prosecutor also argued that "[i]t does not matter if this was a totally accidental killing. If you find—and I think you will—that based upon the evidence there was a burglary and a robbery that was intended by Mr. Pina that night . . . then you should find him guilty of first degree murder because that is what it was."

Pina's counsel conceded, "There was an unlawful killing. . . . The issue for you to decide is going to be what was in the mind of Pablo Pina on the night of February 21st, 1984. Did he have the intent to steal, to deprive John Mendoza of property that belonged to Mendoza and was he going to take that way with no basis for doing so?" According to Pina's counsel, Mendoza was the one who jumped Pina, there was "a violent struggle, the gun would go off and they would leave, Pina would leave," and nothing in the house was taken. Pina's counsel argued that "nobody committed a burglary and nobody committed a robbery, whether it be Cruz, whether it be Oswald, whether it be Garcia, whether it be Pina."

Pina's counsel then urged the jury to use its own judgment to determine what was in Pina's mind "when he brandished the weapon at Mr. Mendoza and then was jumped and violently got into a wrestling match and the gun went off." Pina's counsel later argued that "it has been proved beyond a reasonable doubt that Mr. Pina brandished the firearm and as a result of that Mr. Mendoza died," warranting conviction only for involuntary manslaughter because there was insufficient evidence that Pina intended to steal from Mendoza.

4

**E.**    *The Hearing and the Trial Court's Order Denying the Petition*

In March 2023, the trial court held a hearing on the section 1172.6 petition.  In part, the People argued that even the arguments of defense counsel during closing argument made it "abundantly clear" that Pina was the actual killer and that the trial court was not limited to examining only the jury verdicts and closing arguments and was entitled to consider the entire trial record.  Pina argued that defense counsel may have made a strategic decision "not to argue the actual killer question, [and] simply to attack what the underlying felony crime was" when the only theory presented to the jury was of felony murder.  Thus, Pina argued that defense counsel's arguments did not necessarily concede that he was the actual killer.

In a written order, the trial court declined to issue an order to show cause and denied the petition after concluding that the record of conviction, including the trial evidence, established that Pina was the sole and actual perpetrator of murder rendering him ineligible for relief as a matter of law.  Pina timely appealed.

## II.    DISCUSSION

On appeal, Pina argues that the trial court erred by denying his section 1172.6 petition at the prima facie stage by improperly considering evidence adduced at his trial to determine that he was the actual killer and thus ineligible for relief.  We agree that reversal is required.  Although there was trial evidence that Pina was the shooter, the trial court's conclusion that he was the actual killer involved weighing that trial evidence against Pina's facially sufficient petition and was impermissible at the prima facie stage. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 13 (*Lopez*); *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*).)

**A.**    *Legal Principles and Standard of Review*

On September 30, 2018, the Governor signed Senate Bill No. 1437 (2017–2018 Reg. Sess.) into law, which amended the Penal Code to modify accomplice liability for murder and the felony murder rule.  (Stats. 2018, ch. 1015.)  Senate Bill No. 1437

5

amended the Penal Code "as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § l(f), p. 6674.) Thus, section 189, subdivision (a) now provides that a murder that is "committed in the perpetration of" certain listed felonies, including robbery and burglary, "is murder of the first degree." Subdivision (e) of section 189, the new felony murder rule, further specifies that "[a] participant in the perpetration or attempted perpetration of a [robbery or burglary] in which a death occurs is liable for murder only if" certain elements are proven, including that "[t]he person was the actual killer" (*id.*, subd. (e)(1)).[2]

Under section 1172.6, subdivision (a), a defendant convicted of either felony murder or murder based on the natural and probable consequences doctrine can now bring a petition for resentencing if he or she could not be convicted of murder under the current version of the law. (*Lewis*, *supra*, 11 Cal.5th at p. 957; *People v. Gentile* (2020) 10 Cal.5th 830, 843, superseded by statute on other grounds as stated in *People v. Hola* (2022) 77 Cal.App.5th 362, 370.) "Upon receiving a petition in which the information required by this subdivision is set forth or a petition where any missing information can readily be ascertained by the court, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1172.6, subd. (b)(3).)

_____

[2] Section 189, subdivision (e) also provides that a participant may be liable for murder if he was "not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree" (*id.*, subd. (e)(2)), or if "[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2" (*id.*, subd. (e)(3)). The parties do not otherwise argue that any of these other theories of felony murder are applicable to this case.

6

After counsel has been appointed to represent a defendant who has filed a facially sufficient petition, a trial court must next determine whether the defendant has made a prima facie showing that he or she is entitled to relief.  (§ 1172.6, subds. (a)–(c).)  When making the prima facie determination, the trial court may rely on " 'the record [of conviction], including [its] own documents, "contain[ing] facts refuting the allegations made in the petition . . . ." ' " (*Lewis*, *supra*, 11 Cal.5th 952, 971.)

At the prima facie stage, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion." (*Lewis*, *supra*, 11 Cal.5th at p. 972.)  " '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.]" (*Id.* at p. 971.)  But where the record of conviction " ' "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*)  "[W]e may look to the jury's verdicts, and the factual findings they *necessarily* reflect," to determine what the record of conviction refutes.  (*People v. Curiel* (2023) 15 Cal.5th 433, 465, italics added (*Curiel*).)  On appeal, "[w]e independently review the trial court's determination that the petitioner failed to make a prima facie showing for relief." (*People v. Pickett* (2023) 93 Cal.App.5th 982, 989, review granted Oct. 11, 2023, S281643 (*Pickett*).)

**B.**     ***The Record of Conviction***

We first address Pina's assertion that the evidence adduced at his original trial in his trial transcript cannot be considered at the prima facie stage.  Courts have held that the record of conviction may include the appellate opinion, "the trial evidence, the jury instructions, and closing arguments of counsel.  [Citation.]" (*Lopez*, *supra*, 78 Cal.App.5th 1, 13; *People v. Ervin* (2021) 72 Cal.App.5th 90, 102 [record of conviction includes admissible trial evidence]; *Lewis*, *supra*, 11 Cal.5th at p. 972 [record of conviction includes the appellate record]; see also *People v. Myers* (1993) 5 Cal.4th

7

1193, 1201 [when considering whether foreign conviction is a serious felony, court is entitled to look at "evidence found within the entire record of the foreign conviction"].)[3]

But "the 'prima facie bar was intentionally and correctly set very low.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.) And although the record of conviction *does* include the trial record, neither we nor the trial court may engage in fact-finding at the prima facie stage. (*Ibid.*) At this stage, we do not adopt the truth of facts derived from the trial evidence, unless the jury necessarily found those facts to be true: even our own factual summary in an opinion affirming the judgment on direct appeal, though a part of the record of conviction and based on the trial evidence, cannot be relied upon in the prima facie stage. (*People v. Flores* (2022) 76 Cal.App.5th 974, 988.) In other words, if there is a conflict between even undisputed trial evidence and the petitioner's factual allegations, unless the evidentiary facts in the trial record were necessarily found true by the jury or admitted by the defendant, the trial court cannot reject the petitioner's factual allegations without conducting an evidentiary hearing, as the trial court cannot make credibility determinations in the first instance. (See *Lewis*, at pp. 971–972; *Curiel*, *supra*, 15 Cal.5th at p. 465 ["[i]f the jury has made a factual finding, and it is issue preclusive under the principles described above, a court must give effect to that finding" and doing so is not impermissible factfinding]; *People v. Elder* (2017) 11 Cal.App.5th 123, 133–134 [stipulation is binding if not illegal or contrary to public policy].)

With this framework in mind, we turn to the merits of Pina's claims.

---

[3] Section 1172.6, subdivision (d)(3) permits the court to consider "the procedural history of the case recited in any prior appellate opinion" at an evidentiary hearing. In *People v. Vance* (2023) 94 Cal.App.5th 706, 714, the Fourth District held that "when an appellate opinion is admitted at an evidentiary hearing under section 1172.6, without objection, it is substantial evidence that the trial court can consider." We note that in this case, we are considering the denial of Pina's petition for resentencing at the prima facie stage, and although this court's prior opinion was before the trial court at the time, it appears that the court primarily relied on the trial transcripts that were before it.

## C. *Eligibility for Relief*

As stated, the felony murder rule remains a viable theory of first degree murder if the defendant is the *actual killer*. (§ 189, subd. (e)(1).) One Court of Appeal has determined that the term "actual killer" is "intended to limit liability for felony murder . . . to the actual perpetrator of the killing, i.e., the person (or persons) who personally committed the homicidal act." (*People v. Vang* (2022) 82 Cal.App.5th 64, 88.) In other words, "criminal culpability is restricted to deaths directly caused by the defendant or an accomplice, as distinguished from the 'proximate cause' theory of felony murder, under which a defendant is responsible for any death that proximately results from the unlawful activity." (*Ibid.*)

As there is no dispute that the prosecutor proceeded on the sole theory of felony murder and that felony murder was the only theory on which the jury was instructed, Pina's eligibility for relief hinges on whether the record of conviction conclusively establishes that he may still be convicted of felony murder under the current law. Based on our review of the record, we conclude that he has made a prima facie showing for relief.

First, we agree with Pina that the jury's finding that he personally used a firearm is not determinative. Standing alone, a finding that a defendant personally used a firearm does not conclusively establish a defendant to be the actual killer. (*People v. Jones* (2003) 30 Cal.4th 1084, 1120.) If two robbers display guns to intimidate robbery victims, both robbers personally used a firearm during the commission of the robbery, even if only one later fires. (*Ibid.*) And here, the jury was specifically instructed that personal use of a firearm included displaying the weapon in a menacing manner; the jury's true finding thus does not establish that it found beyond a reasonable doubt that Pina fired the gun.

Second, the jury's verdict and the underlying factual findings the jury must have made to reach that verdict do not conclusively negate the allegations in Pina's petition

9

that he is eligible for relief.  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  As the jury here was *only* instructed on the elements of the former felony murder rule, the verdict here reflects that the jury found that a "human being was killed," the "killing was unlawful," and that the killing occurred during the commission of a burglary or robbery.  To convict Pina of murder, the jury was not required to find that Pina himself was the one who personally committed the homicidal act, killing Mendoza.  And given the instructions, the jury could have found only that Mendoza was killed during the commission of a burglary or robbery during which Pina brandished a weapon.  Without weighing the trial evidence to reach conclusions the jury's verdicts did not require, we cannot determine whether Pina was the actual killer.  (Cf. *People v. Harden* (2022) 81 Cal.App.5th 45, 59–60 [trial court properly denied section 1172.6 petition at prima facie stage because language in jury instructions, including "kills" and "actually killed" and "personally inflicted great bodily injury on [the victim]" established that the jury found the defendant killed the victim].)

Below, the trial court believed that it could rely on uncontroverted trial evidence to determine that Pina was the actual killer.  Although the trial court correctly surmised that the eyewitness testimony at trial pointed to Pina as both the individual who fought with Mendoza and as the only one at the scene believed to have a gun, accepting trial evidence as true and drawing inferences from that evidence goes beyond what is permitted at the prima facie stage.  At the prima facie stage, "we may look to the jury's verdicts, and the factual findings they *necessarily* reflect, to determine whether the record of conviction refutes the factual allegations in [Pina's] petition."  (*Curiel*, *supra*, 15 Cal.5th 433, 465, italics added.)  By crediting the eyewitness' accounts of what happened, the trial court was no longer " 'distinguish[ing] petitions with potential merit from those that are clearly meritless' based on findings already made by the jury"—the court was instead substituting its own determination of the facts.  (*Ibid.*)

Even if the jury would have been entitled to view as overwhelming the evidence that Pina was the shooter, the record of conviction reflects neither that Pina admitted that

he shot and killed Mendoza nor that the jury verdict was necessarily based on such a finding,[4] and Pina implicitly disputed actual-killer liability by proceeding to trial and by his resentencing petition. (See *People v. Walker* (2006) 139 Cal.App.4th 782, 796 [noting that "a defendant [who] pleads not guilty . . . places all issues in dispute"].) Indeed, under the former felony murder rule, Pina would have had little incentive at trial to contest being the shooter, as he would have been liable for the killing as a participant nonshooter "if a victim was killed during an underlying 'predicate' felony." (*People v. Prado* (2020) 49 Cal.App.5th 480, 486, fn. omitted.) Although the trial court may properly judge the trial witnesses to be more credible than Pina at an evidentiary hearing under section 1172.6, subdivision (d)(3), it may not do so at the prima facie stage, when nothing in the instructions, nor the law, required the jury to accept even uncontroverted testimony. (See *People v. Johnson* (1992) 3 Cal.4th 1183, 1231–1232 [jury is free to disbelieve uncontroverted expert testimony].) It may well be that the record following an order to show cause under section 1172.6, subdivision (d)(3) will differ little from the evidence that the trial court improvidently weighed at the prima facie stage. We hold only that Pina may proceed to such a hearing, irrespective of any skepticism based solely on the weight of the trial evidence.

In arguing to the contrary, the Attorney General relies on *Pickett*, where the Court of Appeal affirmed the trial court's summary denial of a section 1172.6 petition at the prima facie stage after determining that uncontradicted evidence, including testimony from the preliminary hearing, showed that the defendant acted alone in killing. (*Pickett*,

---

[4] Although Pina's counsel argued for the lesser offense of involuntary manslaughter on the theory that Pina had "brandished the firearm and as a result of that Mr. Mendoza died," Pina's counsel stopped short of conceding Pina to be the shooter, and regardless, though we may consider counsel's argument, it is not evidence and Pina is not bound by it. (See *People v. Kiney* (2007) 151 Cal.App.4th 807, 815 ["statements of counsel in argument are not deemed judicial admissions unless they have the formality of an admission or a stipulation"].)

11

*supra*, 93 Cal.App.5th at pp. 989–994, review granted.)[5]  The Attorney General analogizes Pina's petition, which laid out no underlying factual allegations, to the petition filed in *Pickett* because the *Pickett* petition was likewise "devoid of factual allegations concerning the killing of" the victim, and the *Pickett* defendant neither denied he was the actual killer nor asserted that another person fired the shot.  (*Id.* at p. 989, review granted.)  But the Attorney General reads *Pickett* too broadly.

In *Pickett*, the reviewing court narrowly affirmed denial of the resentencing petition at the prima facie stage, "where the defendant alleges no facts concerning the murder to which he pleaded guilty, the People introduce without objection uncontroverted evidence from the preliminary hearing transcript showing that the defendant acted alone in killing the victim, and the defendant does not put forth, by way of briefing or oral argument, any factual or legal theory in support of his petition." (*Pickett*, *supra*, 93 Cal.App.5th at p. 990, review granted.)  Likewise, in *People v. Mares* (2024) 99 Cal.App.5th 1158, review granted May 1, 2024, S284232 (*Mares*), the Court of Appeal held that "where a petitioner pled guilty to resolve a murder charge based on the People's uncontradicted evidence that they were the actual killer, a court properly rejects a conclusory assertion that the person could not be guilty today 'because of the changes to Section 188 or 189.' " (*Mares*, at p. 1169.)  In both *Pickett* and *Mares*, the petitioners had elected to plead guilty following a preliminary hearing where the evidence uniformly indicated that each acted alone in killing.  (*Pickett*, at p. 990; *Mares*, at pp. 1162–1163.)  And neither petitioner made any reply—no objection, no evidence, no argument for an alternative theory of liability—to the prosecution's argument that, as established by the

---

[5] We deny Pina's request for judicial notice of the petition for review that was filed in *Pickett*, *supra*, 93 Cal.App.5th 982, review granted.  Pina argues that the petition for review is relevant to the issues raised in his appeal because it explains why *Pickett* was wrongly decided, but the arguments in the petition for review have no precedential value to this case, were not before the trial court, and ultimately are not pertinent to our analysis of the issues.

12

preliminary hearing transcript, the basis for the defendant's prior guilty plea was liability as an actual killer. (*Pickett*, at p. 990; *Mares*, at pp. 1167–1168.)

Here, however, Pina has never admitted liability nor agreed that the evidence presented at trial had any legal effect contrary to his not guilty plea and petition. And unlike the petitioners in *Pickett* and *Mares*, Pina disputed the factual inferences the prosecution sought to draw from the trial record at the prima facie stage. (See *Pickett*, *supra*, 93 Cal.App.5th at p. 987, review granted [defense counsel submitted on petition and did not reply to district attorney's response]; *Mares*, *supra*, 99 Cal.App.5th 1158, 1163, review granted [defense counsel did not file reply to district attorney's opposition and counsel submitted without argument at hearing].) We have no basis to read either *Pickett* or *Mares* as extending to section 1172.6 petitioners who disputed guilt at trial, rather than as discerning the content of a defendant's admission of guilty.

We acknowledge that in its written order, the trial court cited and relied on several cases in which our high court and other Courts of Appeal have considered the record of conviction to determine that the defendant was the actual killer, including *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), *People v. Garcia* (2022) 82 Cal.App.5th 956 (*Garcia*), and *People v. Hurtado* (2023) 89 Cal.App.5th 887 (*Hurtado*). But the cases relied upon by the trial court do not conclusively hold that a trial court does *not* engage in factfinding when considering the trial transcript at the prima facie stage of section 1172.6 resentencing.

First, *Garcia* is distinguishable as the trial court there denied the petition after an evidentiary hearing. (*Garcia*, *supra*, 82 Cal.App.5th at p. 966.) Second, in *Delgadillo*, our high court concluded that the "record . . . makes clear" that Delgadillo was the actual killer and the only participant in the crime but did not otherwise discuss what portions of the record of conviction it relied on. (*Delgadillo*, *supra*, 14 Cal.5th at p. 233.) The defense in *Delgadillo* also *conceded* that Delgadillo had been driving on the wrong side of the road at the time of the fatal accident, and the jury convicted him of second degree

murder under an actual implied malice theory rather than a theory where malice was imputed to the defendant. (*Id.* at pp. 223, 233.) And third, as in *Delgadillo*, the *Hurtado* court did not disclose which portion of the record of conviction it relied on to make this determination, nor was the propriety of relying on the trial transcripts raised by any party. (*Hurtado*, *supra*, 89 Cal.App.5th at p. 893.) It is axiomatic that cases are not authority for propositions not considered. (*People v. Barragan* (2004) 32 Cal.4th 236, 243.)[6]

Without resorting to fact-finding, we cannot ascertain whether Pina was the actual killer based solely on the jury's findings and the factual findings necessarily reflected by the verdict. Because we cannot make a credibility determination adverse to Pina's allegations, we must conclude that the trial court erred by denying his petition at the prima facie stage. (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

## III.  DISPOSITION

The order denying Pina's petition for resentencing is reversed and the trial court is directed to issue an order to show cause and conduct an evidentiary hearing.

---

[6] We note that in *People v. Bodely* (2023) 95 Cal.App.5th 1193, a different panel from this court in part relied on the evidence at trial to determine that the defendant was ineligible for relief at the prima facie stage of a section 1172.6 resentencing petition as the actual killer. (*Bodely*, at p. 1201.) This court noted that "[t]he evidence at trial revealed no indication of any accomplice." (*Ibid.*) But the issues raised in *Bodely* were whether the *Bodely* defendant could be the actual killer if the death was accidental and whether " 'an instruction on producing a death via the "natural and probable consequences" of other acts encouraged the jury to treat the question of causation in the broadest possible terms,' " suggesting that the defendant may not have been the actual killer. (*Id.* at p. 1199.) The parties in *Bodely* did not dispute the reliance on the trial transcript at the prima facie stage, and the issue was not discussed or analyzed in this court's opinion.

14

                             _____

                             LIE, J.

WE CONCUR:

_____
GREENWOOD, P. J.

_____
GROVER, J.

*People v. Pina*
H050931